VAN ZANEN v KEYDEL

Docket No. 78-634. Submitted January 5, 1979, at Detroit.—Decided
    April 2, 1979.

Reyer Van Zanen, Citizens for Realistic Priorities, Ray Township,
    and Macomb County Rotary Camp & Training Association, Inc.,
    filed a complaint in several counts against Kurt R. Keydel, a
    commissioner of the Huron-Clinton Metropolitan Authority and
    each of the authority's other commissioners and the authority
    itself to enjoin the defendants from proceeding with the devel-
    opment of a park which was to have been located in Ray
    Township, Macomb County. The Macomb Circuit Court, Ed-
    ward J. Gallagher, J., dismissed the complaint. Plaintiffs appeal
    that portion of the trial court's decision which held that the
    method of selection of the commissioners of the authority does
    not violate equal protection. *Held:*

    The selection of the commissioners, which is accomplished by
    the appointment by the county supervisors of one representa-
    tive from each county and the appointment of two by the
    governor, without regard to the varying populations of the five
    constituent counties, does not violate equal protection. The
    functions of the authority are such that it is the type of
    governmental unit for which it is constitutionally permissible
    to appoint, rather than elect, officials, and, therefore, the
    doctrine of one person, one vote is not applicable.

    Affirmed.

1. CONSTITUTIONAL LAW — ELECTIONS — ONE PERSON, ONE VOTE —
    APPOINTMENT OF OFFICIALS.
    The doctrine of one person, one vote applies to units of state and
    local government which are composed of members elected by
    the voters; however, where the selection of some governmental
    officials by appointment is permissible, the one person-one vote
    doctrine does not apply.

REFERENCES FOR POINTS IN HEADNOTES
[1] 25 Am Jur 2d, Elections § 16.
[2] 25 Am Jur 2d, Elections § 16.
   63 Am Jur 2d, Public Officers and Employees § 90.

2. CONSTITUTIONAL LAW — EQUAL PROTECTION — HURON-CLINTON
   METROPOLITAN AUTHORITY — APPOINTMENT OF OFFICIALS.

   The process of selection of commissioners of the Huron-Clinton
   Metropolitan Authority, which is an appointive process rather
   than elective, does not violate the Equal Protection Clause of
   the Constitution; the one person-one vote doctrine does not
   apply, and the appointment of one commissioner from each of
   the five constituent counties, regardless of population, is per-
   missible (US Const, Am XIV).

*LaBarge, Zatkoff & Dinning, P.C.,* for plaintiffs.

*Miller, Canfield, Paddock & Stone* (by *Gilbert E. Gove* and *Thomas P. Hustoles),* for defendants.

Before: N. J. KAUFMAN, P.J., and T. M. BURNS and BASHARA, JJ.

N. J. KAUFMAN, P.J. On November 26, 1973, plaintiffs filed a complaint to enjoin the defendants from planning, acquiring, developing and operating a proposed park to be known as "North Branch Metropolitan Park" and to be located in Ray Township. On January 30, 1978, the circuit court dismissed plaintiffs' complaint. Plaintiffs appeal by right from that dismissal.

The sole issue on appeal is whether or not the metropolitan district act, MCL 119.51 *et seq.;* MSA 5.2148(1) *et seq.,* violates the Equal Protection Clause of the United States Constitution[1] by entitling each constituent county to appoint one Huron-Clinton Metropolitan Authority Commissioner regardless of the size of its population. We conclude that it does not.

The Huron-Clinton Metropolitan Authority (hereinafter HCMA) was established in 1940 for the purpose of planning, acquiring, developing and

---

[1] "* * * No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." US Const, Am XIV, § 1.

maintaining parks in southeastern Michigan. MCL 119.51; MSA 5.2148(1). It is comprised of Wayne, Washtenaw, Livingston, Oakland, and Macomb Counties. Each of these counties joined the HCMA after a majority of its voters approved the proposal. See MCL 119.51; MSA 5.2148(1), MCL 119.60; MSA 5.2148(10), and MCL 119.61; MSA 5.2148(11).

The seven-member governing board consists of two commissioners appointed by the governor and one commissioner elected by each participating county's board of supervisors. MCL 119.54; MSA 5.2148(4), and MCL 119.61; MSA 5.2148(11).

The powers of the HCMA are specifically delineated by the act. MCL 119.53; MSA 5.2148(3) authorizes the HCMA to plan, acquire, and operate parks and to fix and collect fees for the use of the parks. MCL 119.57; MSA 5.2148(7) permits the levy and collection of taxes. MCL 119.58; MSA 5.2148(8) provides for the issuance of self-liquidating revenue bonds. Finally, MCL 119.59; MSA 5.2148(9) authorizes the acquisition of property through purchase, gift, devise or condemnation.

Both parties agree that representation on the governing board is not apportioned on the basis of population.[2] Our question, then, is one of law.

In *Reynolds v Sims,* 377 US 533; 84 S Ct 1362; 12 L Ed 2d 506 (1964), the United States Supreme Court concluded that the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on the

---

[2] The population of the five counties, based on the 1970 census as reported by the Elections Division of the Secretary of State, is as follows:

| | |
|---|---|
| Wayne | 2,666,751 |
| Oakland | 907,871 |
| Macomb | 625,309 |
| Washtenaw | 234,103 |
| Livingston | 58,967. |

basis of population. But in *Brouwer v Kent County Clerk,* 377 Mich 616; 141 NW2d 98 (1966), our Supreme Court split evenly on the issue of whether or not the *Reynolds* rule also applied to units of local government.

The United States Supreme Court initially faced the local government question in the Michigan case of *Sailors v Board of Education of the County of Kent,* 387 US 105; 87 S Ct 1549; 18 L Ed 2d 650 (1967). The County Board of Education was chosen by delegates from the local boards, but each local board sent only one delegate regardless of the number of people it represented. The county board had the authority to appoint a county school supervisor, prepare an annual budget and levy taxes, distribute delinquent taxes, furnish various educational services to member districts, employ teachers for special educational programs, establish a school for children in juvenile homes, and transfer areas from one school district to another. MCL 340.298a; MSA 15.3298(1), MCL 340.461; MSA 15.3461.

After reviewing *Reynolds, supra,* the Court concluded, 387 US at 108-111:

"We find no constitutional reason why state or local officers of the nonlegislative character involved here may not be chosen by the governor, by the legislature, or by some other appointive means rather than by an election. Our cases have, in the main, dealt with elections for United States Senator or Congressman * * * or for state officers * * * or for state legislators. * * *

* * *

"* * * Save and unless the state, county, or municipal government runs afoul of a federally protected right, it has vast leeway in the management of its internal affairs.

"The Michigan system for selecting members of the county school board is basically appointive rather than

elective. We need not decide at the present time whether a State may constitute a local legislative body through the appointive rather than the elective process. We reserve that question for other cases * * *. We do not have that question here, as the County Board of Education performs essentially administrative functions; and while they are important, they are not legislative in the classical sense.

"Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions. We see nothing in the Constitution to prevent experimentation. *At least as respects nonlegislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here.* If we assume *arguendo* that where a State provides for an election of a local official or agency—whether administrative, legislative, or judicial—the requirements of * * * *Reynolds v Sims* must be met, no question of that character is presented. For while there was an election here for the local school board, no constitutional complaint is raised respecting that election. Since the choice of members of the county school board did not involve an election and since none was required for these nonlegislative offices, the principle of 'one man, one vote' has no relevancy." (Footnotes and citations omitted.) (Emphasis added.)

The emphasis in *Sailors* was on the distinction between legislative and administrative bodies, but in *Avery v Midland County, Texas,* 390 US 474; 88 S Ct 1114; 20 L Ed 2d 45 (1968), the Court offered an alternative test. *Avery* involved the five-member general governing body of a Texas county, the Commissioners Court, one member of which was elected at large and four members of which were elected from single-member districts of substantially unequal propulation. The Commissioners Court had the power to establish a courthouse and jail, appoint numerous minor officials, fill vacancies in county offices, let contracts in the name of

the county, build roads and bridges, administer the county's public welfare services, perform numerous duties in regard to elections, set the county tax rate, issue bonds, adopt the county budget, serve as a board of equalization for tax assessments, build and run a hospital, an airport, and libraries, fix county school district boundaries, establish a regional public housing authority, and determine the districts for election of its own members.

After noting that the Commissioners Court was charged with legislative, executive, administrative, and judicial tasks, the Supreme Court refused to categorize the body as administrative or legislative. the Court concluded, 390 US at 480-481 and 485-486:

"When the State apportions its legislature, it must have due regard for the Equal Protection Clause. Similarly, *when the State delegates lawmaking power to local government and provides for the election of local officials from districts specified by statute, ordinance, or local charter, it must insure that those qualified to vote have the right to an equally effective voice in the election process.* If voters residing in oversize districts are denied their constitutional right to participate in the election of state legislators, precisely the same kind of deprivation occurs when the members of a city council, school board, or county governing board are elected from districts of substantially unequal population. If the five senators representing a city in the state legislature may not be elected from districts ranging in size from 50,000 to 500,000, neither is it permissible to elect the members of the city council from those same districts. In either case, the votes of some residents have greater weight than those of others; in both cases the equal protection of the laws has been denied.

\* \* \*

"This Court is aware of the immense pressures facing units of local government, and of the greatly varying

problems with which they must deal. The Constitution does not require that a uniform straitjacket bind citizens in devising mechanisms of local government suitable for local needs and efficient in solving local problems. Last Term, for example, the Court upheld a procedure for choosing a school board that placed the selection with school boards of component districts even though the component boards had equal votes and served unequal populations. *Sailors v Board of Education,* 387 US 105 [87 S Ct 1549; 18 L Ed 2d 650] (1967). The Court rested on the administrative nature of the area school board's functions and the essentially appointive form of the scheme employed. In *Dusch v Davis,* 387 US 112 [87 S Ct 1554; 18 L Ed 2d 656] (1967), the Court permitted Virginia Beach to choose its legislative body by a scheme that included at-large voting for candidates, some of whom had to be residents of particular districts, even though the residence districts varied widely in population.

"The *Sailors* and *Dusch* cases demonstrate that the Constitution and this Court are not roadblocks in the path of innovation, experiment, and development among units of local government. We will not bar what Professor Wood has called 'the emergence of a new ideology and structure of public bodies, equipped with new capacities and motivations * * *.' R. Wood, 1400 Governments, at 175 (1961). Our decision today is only that *the Constitution imposes one ground rule for the development of arrangements of local government: a requirement that units with general governmental powers over an entire geographic area not be apportioned among single-member districts of substantially unequal population."* (Footnote omitted. Emphasis added.)

The *Sailors* administrative-legislative distinction was eventually discarded altogether in *Hadley v Junior College District of Metropolitan Kansas City,* 397 US 50; 90 S Ct 791; 25 L Ed 2d 45 (1970), which involved the popular election of the trustees of a junior college district. The Court concluded that the distinction was unmanageable because

governmental activities "cannot be easily classified in the neat categories favored by civics texts". 397 US at 55-56.

*Hadley* went on to state, 397 US at 56, 58:

"* * * [A]s a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials.

* * *

"* * * We have also held that where a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not 'represent' the same number of people does not deny those people equal protection of the laws. *Sailors v Board of Education,* 387 US 105 [87 S Ct 1549; 18 L Ed 2d 650] (1967); cf. *Fortson v Morris,* 385 US 231 [87 S Ct 446; 17 L Ed 2d 330] (1966)."

In short, the one person-one vote doctrine applies to state and local government units which are composed of members elected by the voters. However, a state or local government may select some government officials by appointment. And where appointment is permissible, the one person-one vote doctrine does not apply. In determining whether or not a given government unit may be composed of appointees, the Supreme Court has abandoned the administrative-legislative test. Unfortunately, the Court has offered no alternative formulation of a rule by which we might deter-

mine which government officials may be selected by appointment and which may not. The most that can be said is that the more a local unit's functions and powers parallel those of the board of education considered in *Sailors, supra,* the more likely it is that a state may constitutionally provide for appointment of government officials to that unit.

The selection process in the instant case is appointive rather than elective. Consequently, the dispositive issue is whether or not the powers and functions of the HCMA are sufficiently analogous to those exercised by the board of education in *Sailors* to render an appointive system constitutional.

The powers of the HCMA and the board of education in *Sailors* have already been listed and we make the following observations: 1) Both entities are special purpose units, not general governmental units; 2) The general planning and management functions of the HCMA with respect to parks are similar to those of the county board of education with respect to schools; 3) The HCMA's power to acquire the property of a county, city, village or township is subject to approval by a majority vote of the electors of such county, city, etc., MCL 119.53; 4) Both the HCMA and the county board of education were empowered to levy taxes, but the HCMA's authority in this respect is expressly circumscribed, MCL 119.57; 5) While it appears that only the HCMA could issue bonds, its authority to do so is very limited, MCL 119.58; 6) While it appears that only the HCMA could condemn private property, the individual whose property is condemned is apparently entitled to a jury trial at which the HCMA must prove that it is necessary to make the contemplated improvement

and that it is necessary to take the individual's property for the improvement, and at which just compensation is fixed, MCL 119.59 and MCL 213.21 *et seq.;* MSA 8.11 *et seq.*

In sum, while the HCMA's powers are somewhat more extensive than those of the county board of education, we conclude that the state may constitutionally provide for appointment of HCMA commissioners. Accordingly, the one person-one vote doctrine does not apply in this case.

Finally, we wish to point out that the voters of each member county voted to join the HCMA with full knowledge of the representation they would be afforded. And, while it does not appear that a county could unilaterally withdraw from the HCMA, a county could request the Legislature to amend the statute so as to increase its representation on the Board of Commissioners. See OAG, 1949-50, No. 1219, p 570 (May 31, 1950), and OAG, 1976, No. 4994, p 427 (April 23, 1976).

Affirmed.