**City of St. Albans v. Northwest Regional Planning Commission**

[708 A.2d 194]

No. 97-268

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed March 13, 1998

---

*Robert E. Farrar*, St. Albans, for Plaintiff-Appellant.

*Paul S. Gillies* of *Tarrant, Marks & Gillies*, Montpelier, for Defendant-Appellee.

**Skoglund, J.** Plaintiff City of St. Albans appeals from a Franklin Superior Court order granting defendant Northwest Regional Planning Commission's (NWRPC) motion for summary judgment. City of St. Albans contends the court erred in concluding that the method of selecting NWRPC's commissioners does not violate the equal protection clause of the United States Constitution and its "one person, one vote" principle. We affirm.

NWRPC was created to serve the 24 towns, villages, and city (St. Albans) of Grand Isle and Franklin counties. See 24 V.S.A. § 4341(a) ("A regional planning commission may be created . . . by the act of the voters or the legislative body of each of a number of contiguous municipalities . . . ."). While a regional planning commission (RPC) is required to "contain at least one representative appointed from each member municipality," *id.* § 4342, individual RPCs may have more than one representative per member municipality if its charter and bylaw so permit. See *id.* § 4343. NWRPC's bylaws provide that each municipality, regardless of its population, must appoint two commissioners to represent it and each commissioner has one vote. Thus, there are forty-eight NWRPC commissioners. In addition, NWRPC's bylaws provide that each member municipality will be assessed a share of NWRPC's expenses based upon the member municipality's population compared to the total population of NWRPC.

The general purpose of an RPC is to "encourage the appropriate development of all lands." *Id.* § 4302(a). "Appropriate development" requires RPCs to consider the impact development has on a long list of delineated subject areas, including public health and safety, the general welfare, taxes, traffic, arts, architecture, and the environment. See *id.* § 4302(a). Sections 4302(b) and (c) require an RPC to "engage in a continuing planning process" to further a number of specific goals, including developing "a coordinated, comprehensive planning process and policy framework to guide decisions by municipalities, [RPCs], and state agencies." St. Albans (hereinafter "City")

is the largest member municipality in NWRPC.[1] Because each member municipality of NWRPC is represented by two votes regardless of that member municipality's population and because the expenses of NWRPC are shared on a per-capita basis, the City sought a declaratory judgment in Franklin Superior Court, pursuant to 12 V.S.A. § 4711. The City claimed that the current NWRPC commissioner-selection scheme violates the Fourteenth Amendment to the United States Constitution[2] because NWRPC fails to provide apportionment on a "one person, one vote" basis and, thereby, denies the residents of the City equal protection under the law. Both the City and the NWRPC subsequently filed motions for summary judgment

---

[1] According to the U.S. Department of Commerce, *1990 Census of Population and Housing: Summary Population and Housing Characteristics: Vermont*, at 2, the population of NWRPC's member municipalities are as follows:

Franklin County

| | |
|---|---|
| Bakersfield town | 997 |
| Berkshire town | 1,190 |
| Enosburg town | 2,535 |
| *Enosburg Falls village | 1,350 |
| Fairfax town | 2,486 |
| Fairfield town | 1,680 |
| Fletcher town | 941 |
| Franklin town | 1,068 |
| Georgia town | 3,753 |
| Highgate town | 3,020 |
| Montgomery town | 823 |
| Richford town | 2,178 |
| *Richford village | 1,425 |
| St. Albans city | 7,339 |
| St. Albans town | 4,606 |
| Sheldon town | 1,748 |
| Swanton town | 5,636 |
| *Swanton village | 2,360 |
| TOTAL POPULATION | 39,980 |

Grand Isle County

| | |
|---|---|
| Alburg town | 1,362 |
| *Alburg village | 436 |
| Grand Isle town | 1,642 |
| Isle La Motte town | 408 |
| North Hero town | 502 |
| South Hero town | 1,404 |
| TOTAL POPULATION | 5,318 |

\* The populations of the villages are also included in their reprective town's population and, therefore, are not used to calculate the total populations of the counties.

[2] "No State shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

claiming that there was no genuine issue of material fact — the City claiming that NWRPC's apportionment scheme violated the equal protection clause and NWRPC claiming that the equal protection clause was inapplicable to NWRPC's apportionment scheme. The court, concluding that the equal protection clause did not apply to NWRPC's apportionment scheme because NWRPC commissioners are appointed officials and NWRPC has a special and limited purpose, granted NWRPC's motion for summary judgment. This appeal followed.

In reviewing a grant of summary judgment, we apply the same standard as the trial court. See *Madden v. Omega Optical, Inc.,* 165 Vt. 306, 309, 683 A.2d 386, 389 (1996). Thus, summary judgment will be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See *Wesco, Inc. v. Hay-Now, Inc.,* 159 Vt. 23, 26, 613 A.2d 207, 209 (1992). When both parties move for summary judgment, "both parties are entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." *Tooley v. Robinson Springs Corp.,* 163 Vt. 627, 628, 660 A.2d 293, 294 (1995).

It is clear that on a population basis, the City's representative strength in NWRPC is diluted in comparison with those of the other member municipalities — the City's population accounts for 16.2% of the total population of NWRPC member municipalities, but it is represented by only 4.2% of all NWRPC commissioners. The question is whether this dilution violates constitutional standards.

The United States Supreme Court has held that the equal protection clause mandates that seats in state legislatures be apportioned on the basis of population. See *Reynolds v. Sims,* 377 U.S. 533 (1964). Protection afforded by the equal protection clause has also been extended to apportionment schemes of local governmental units. See *Gray v. Sanders,* 372 U.S. 368 (1963). A state or local government, however, may select some government officials by appointment, and where appointment is permissible, the "one person, one vote" doctrine does not apply. See *Sailors v. Board of Educ. of County of Kent,* 387 U.S. 105, 111 (1967).

In *Sailors*, residents of school districts (qualified school electors) elected members to their local school district boards. Each local school board then sent a delegate to a biennial meeting and those delegates elected members to the county board of education from candidates nominated by the qualified school electors. Candidates did

not need to be members of the local boards. Each local board could pick only one delegate regardless of the number of people within the local board's district. A group of school electors brought suit claiming that the county board was unconstitutionally constituted. The Court concluded that the county board performed "essentially administrative functions; and while they are important, they are not legislative in the classical sense." *Id.* at 110 (footnote omitted). In addition, the Court concluded that the county board members were "basically" appointed rather than elected. *Id.* at 109. Therefore, the Court held that "[s]ince the choice of members of the county school board did not involve an election and since none was required for these nonlegislative offices, the principle of 'one man, one vote' has no relevancy." *Id.* at 111.[3]

We next consider whether it is constitutionally permissible to appoint commissioners to NWRPC. In *Hadley v. Junior College Dist. of Metro. Kansas City*, 397 U.S. 50 (1970), the Court was again required to decide whether the "one person, one vote" principle applied to a local governmental unit. Missouri law authorized separate school districts to vote by referendum to create a consolidated junior college district and elect six trustees to manage the affairs of the district. The junior college district was authorized to (1) levy and collect taxes, (2) issue bonds, (3) hire and fire teachers, (4) make contracts, (5) collect fees, and (6) acquire property by condemnation. These trustees were apportioned among the member school districts based on "school enumeration," which was statutorily defined as the number of persons between the ages of six and twenty years, who resided in each district. Under this apportionment scheme, the largest member school district, which contained 60% of the total "school enumeration," was only permitted to select three trustees, or 50% of the total number of trustees.

The largest member school district brought suit claiming that its right to vote for the trustees of the district was unconstitutionally diluted. Deciding that the "legislative-administrative" test as described in *Sailors* was unmanageable because governmental activities

---

[3] Although the City suggests that the definition of "appointive office" found in *Sailors* may preclude a holding that NWRPC commissioners are "appointed," we reject this argument. Section 4343(a) of Title 24 states that "Representatives to a regional planning commission representing each participating municipality shall be appointed for a term . . . ." Because the City's contention "comes at the expense of the plain meaning of" § 4343, we conclude that commissioners are "appointed officials." *Secretary v. Henry*, 161 Vt. 556, 559, 641 A.2d 1345, 1347 (1994).

"cannot easily be classified in the neat categories favored by civics texts," *id.* at 56, the Court replaced it with the "governmental functions" test[4] and concluded that the trustees performed governmental functions. Because the trustees were elected officials and performed governmental functions, the Court found the statutory scheme unconstitutional. See *id.* ("[A]s a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election . . . ."); see also *In re Town of Hartland,* 160 Vt. 9, 35, 624 A.2d 323, 338 (1993) ("[E]qual representation applies to local governing bodies in situations where the members of the local body are elected officials, and the body exercises a wide range of local governmental functions.").[5]

The *Hadley* Court, however, went on to state that "where a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not 'represent' the same number of people does not deny those people equal protection of the laws." See *Hadley,* 397 U.S. at 58. Thus, it is clear that in certain circumstances, governments may authorize appointment of members to governmental bodies without regard to issues of representational equality. See *id.; Sailors,* 387 U.S. at 111 ("At least as respects nonlegislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here."). The United States Supreme Court, however, has provided no clear guidance to the states to assist them in determining under what circumstances may a state authorize appointments to local governmental units. Therefore, lacking such a test, we will determine whether the duties and tasks of NWRPC are similar in scope and scale to those constitutionally permitted to be performed by the appointed county school board in *Sailors.* See *Van Zanen v. Keydel,* 280 N.W.2d 535, 539

---

[4] In fact, two years prior to *Hadley,* the Court had formulated an alternative test to the *Sailors* "legislative-administrative" test, which instead determined whether local governmental bodies exercised "general governmental powers over the entire geographic area." *Avery v. Midland County,* 390 U.S. 474, 485-86 (1968).

[5] We note that the United States Supreme Court again addressed the "one person, one vote" principle in *Board of Estimate of City of New York v. Morris,* 489 U.S. 688 (1989). Because the Court found that the members of the board of estimate were elected "as a matter of law," see *id.* at 694, we conclude that *Board of Estimate* is not dispositive of the issues in the present case.

(Mich. Ct. App. 1979) ("The most that can be said is that the more a local unit's functions and powers parallel those of the board of education considered in *Sailors*, the more likely it is that a state may constitutionally provide for appointment of government officials to that unit.").

The required duties of NWRPC, set forth in 24 V.S.A. § 4345a, include: (1) promoting mutual cooperation between its member municipalities; (2) assisting and advising its member municipalities regarding economic development; (3) advising municipal governing bodies regarding public financing; (4) providing technical and legal assistance to municipalities; (5) cooperating with neighboring states, regions, counties, and municipalities; (6) preparing a detailed regional plan and implementation guidelines; (7) reviewing municipality plans and state capital expenditures; (8) appearing before district environmental commissions and public service boards; and (9) holding public hearings. In addition, NWRPC's optional powers and duties, set forth in 24 V.S.A. § 4345, include: (1) conducting studies, undertaking comprehensive planning, and making recommendations regarding land development, urban renewal, transportation, economic, industrial, commercial, and social development; (2) collecting relevant information from member municipalities and all state agencies; (3) examining and surveying land; (4) retaining staff and consultants; and (5) managing economic development programs.

The *Sailors* county board's main functions included: (1) appointing a county school supervisor; (2) preparing an annual budget; (3) levying taxes; (4) distributing delinquent taxes; (5) furnishing consulting or supervisory services to the member districts upon request; (6) conducting cooperative educational programs; (7) employing special-education teachers; (8) at the direction of the board of supervisors, establishing a school at the juvenile home; and (9) transferring areas from one school district to another. See *Sailors*, 387 U.S. at 110 n.7.

By comparing NWRPC's mandatory and optional duties with those of the *Sailors* county board, it is clear that NWRPC has been authorized to perform far fewer functions that could reasonably be considered governmental in nature than the county board in *Sailors*, i.e., NWRPC can not levy taxes nor can it alter boundary lines of its member municipalities. Because NWRPC performs fewer governmental functions than the *Sailors* county board, we conclude that it is constitutionally permissible for the state to provide for appointment of NWRPC commissioners. Compare *Van Zanen*, 280 N.W.2d at 539

(concluding that even though Huron-Clinton Metropolitan Authority (HCMA) is authorized to perform more governmental functions than the *Sailors* board, the appointment of HCMA members was constitutionally permissible).

In addition, we note that numerous "two-tier" appointment processes, similar to NWRPC's procedures, have been found to be constitutional by other courts. See, e.g., *Burton v. Whittier Reg'l Vocational Technical Sch. Dist.*, 587 F.2d 66, 70 (1st Cir. 1978); *Rosenthal v. Board of Educ. of Cent. High Sch. Dist. No. 3*, 385 F. Supp. 223, 226 (E.D.N.Y. 1974). Finally, we note that the residents of the City knew when they ratified NWRPC's bylaws that their representation in NWRPC would not be in proportion to their population and that NWRPC commissioners would be appointed by their respective municipal officials and not elected. See *Burton*, 587 F.2d at 70; *Van Zanen*, 280 N.W.2d at 539 (noting that "each member county voted to join the [metropolitan authority] with full knowledge of the representation they would be afforded"). No voting rights were denied the residents of the City of St. Albans, nor was there any violation of the "one person, one vote" constitutional standard.

*Affirmed.*