MOSES, INC v SOUTHEAST MICHIGAN
COUNCIL OF GOVERNMENTS

Docket No. 258749. Submitted March 14, 2006, at Detroit. Decided
March 23, 2006, at 9:20 a.m.

MOSES, Inc., and others brought an action in the Wayne Circuit
Court against the Southeast Michigan Council of Governments
(SEMCOG). The plaintiffs included advocacy organizations, indi-
viduals with disabilities, and individuals who are African-
American. SEMCOG is a multipurpose regional planning commis-
sion composed of local units of government, and is a metropolitan
planning organization for the purposes of planning regional trans-
portation projects and federal funding eligibility. The complaint
asserted various civil rights violations and equal protection and
other constitutional claims, all related to SEMCOG's organiza-
tional structure, an alleged disparate voting power given to the
city of Detroit as a SEMCOG member, and alleged resultant
disparities in the funding of mass transit. The city of Detroit was
not a party to the action. The court, John H. Gillis, Jr., J., granted
SEMCOG summary disposition on all counts and denied the
plaintiffs' summary disposition motion, concluding that the plain-
tiffs had failed to state claims for which relief could be granted.
The plaintiffs appealed.

The Court of Appeals *held*:

1. The plaintiffs, individually and collectively, lack standing on
any ground. An action must be prosecuted in the name of the real
party in interest. The plaintiffs alleged that the city of Detroit is
underrepresented in the voting structure of SEMCOG in relation
to its population, but did not allege that they are authorized to
prosecute this claim on the city's behalf. Accordingly, the indi-
vidual plaintiffs lack standing because they have not alleged a
particularized injury in fact to a legally protected interest they
individually possess rather than an injury common to the citizenry
at large. The organizational plaintiffs lack standing because they
have failed to allege that any of their members have suffered an
injury to a legally protected interest that allows the organizations
to gain standing vicariously. MCR 2.201(B)(4) does not create
standing in this case because the plaintiffs do not seek to prevent

the illegal expenditure of state funds or to test the constitutionality of a statute relating to such an expenditure. Nor does the filing of an action for declaratory relief pursuant to MCR 2.605 create standing.

2. With regard to the argument that the city of Detroit's disproportionately lower voting power in SEMCOG denies the city's African-American residents equal protection, the constitutional principle of one person, one vote does not apply to SEMCOG because its constituent governmental units lawfully appoint their representatives to that body. The plaintiffs have no standing to assert an equal protection claim because they have established no legally protected interest that has been adversely affected.

3. The plaintiffs also lack standing to assert racial discrimination claims. With regard to Const 1963, art 1, § 2, a disparate effect alone is insufficient to establish a claim under that provision, and the plaintiffs have not alleged purposeful or intentional racial discrimination in SEMCOG's refusal to give Detroit, with its predominately African-American population, greater voting power in SEMCOG's organizational structure. The citizens of Detroit have no fundamental right to directly elect the city's representatives to SEMCOG. Moreover, any disparate treatment or disparate impact alleged to be in violation of MCL 37.2302 of the Civil Rights Act falls equally on all of the city's residents. The plaintiffs have thus not alleged an injury in fact. For the same reasons, the plaintiffs do not have standing with regard to alleged violations of the Persons With Disabilities Civil Rights Act, MCL 37.1101 *et seq.*, or their constitutional right to travel.

4. The trial court did not err by not allowing the plaintiffs to amend their complaint or conduct further discovery. The amendment would be futile because the essence of the complaint would not be altered, and further discovery would not likely uncover facts to support the plaintiffs' nonjusticiable claims.

Affirmed.

Michigan Legal Services, Inc. (by *Marilyn Mullane, Gary A. Benjamin*, and *Charles D. Brown*), and *Richard Bernstein* for the plaintiffs.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Jerome R. Watson* and *Christopher M. Trebilcock*), for the defendant.

Before: COOPER, P.J., and JANSEN and MARKEY, JJ.

MARKEY, J. Plaintiffs appeal by right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(8) and denying plaintiffs' motion for partial summary disposition under MCR 2.116(C)(10). We hold that all plaintiffs lack standing to assert the political questions they raise in their complaint. To the extent that the individual plaintiffs have standing to allege a violation of their civil rights or the constitutional guarantee of equal protection under the law, the trial court correctly concluded that plaintiffs' complaint failed to state a claim on which relief can be granted and that the corporate plaintiffs' derivative claims also fail. We affirm.

## I. SUMMARY OF FACTS AND PROCEEDINGS

SEMCOG is the acronym of the Southeast Michigan Council of Governments, a multipurpose regional planning commission formed under MCL 125.11 *et seq.* SEMCOG is composed of local units of government from Wayne, Oakland, Macomb, Livingston, Monroe, St. Clair, and Washtenaw counties; membership is voluntary. The federal government has designated SEMCOG as a metropolitan planning organization (MPO) for the purposes of planning regional transportation projects and eligibility for federal funding. See 23 USC 134 and 49 USC 5303. Plaintiffs contend that the organizational structure of SEMCOG accords the city of Detroit less voting power than the city might otherwise have because of its population as compared to that of other governmental members of SEMCOG.

In essence, plaintiffs claim that because the majority of Detroit's residents are African-American, the dispar-

ate voting power of the city as a SEMCOG member violates Michigan's Civil Rights Act (CRA), MCL 37.2101 *et seq.*, and the Equal Protection Clause of the Michigan Constitution, Const 1963, art 1, § 2. Plaintiffs further argue that the city of Detroit's alleged illegal disparate voting rights cause SEMCOG to unfairly favor federal funding of road maintenance projects over federal funding of mass transit. Plaintiffs also allege that this bias against funding mass transit violates the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, and plaintiffs' constitutional right to travel. The city of Ferndale asserts that inadequate funding of mass transit harms its citizens, basing its claims on the alleged discriminatory structure of SEMCOG.

In its written opinion granting defendant's motion for summary disposition, the trial court summarized the governing structure of SEMCOG as follows:

> The governing structure of SEMCOG is organized into a General Assembly and an Executive Committee. The General Assembly meets at least twice annually to adopt the annual work program, annual budget, and membership fee schedules, amend by-laws, and approve regional plans. Delegates must be elected officials of the designating governmental unit. The Executive Committee (EC) is a subset of the General Assembly and is composed of 46 members. The EC is the main policy committee of SEMCOG, and it meets periodically to review regional studies and to take action on policies and legislation. With the exception of the City of Detroit, membership on the EC is primarily limited to the seven member counties of the region. Membership on the EC is not based on a one person-one vote basis but rather on a modified one government-one vote basis in which additional delegates are allocated to the most heavily populated counties and to the City of Detroit. For example, the City of Detroit is allocated three delegates on the EC for its population of

more than 900,000 people. Livingston County, which has a population of less than 200,000 people, is allocated four delegates. Detroit is presently more than 80% African-American, while Livingston County on the opposite extreme is less than 1% African-American. In August 2003, the SEMCOG By-laws Committee was apparently asked to correct the under-representation of the City of Detroit. However, in October 2003, SEMCOG ratified the voting structure and refused to change the by-laws.

Plaintiffs filed their four-count complaint on November 19, 2003. In count I, plaintiffs allege that SEMCOG's governing structure violates § 302 of the CRA, MCL 37.2302, because it discriminates against residents of Detroit on the basis of their race. In count II, plaintiffs allege that the disparate voting power accorded Detroit in SEMCOG denies African-American residents of the city the equal protection of the laws in violation of Const 1963, art 1, § 2. The city of Ferndale asserts in count III derivative claims based on the alleged racial discrimination set forth in counts I and II. Plaintiffs allege in count IV that the racial discrimination asserted in counts I and II causes SEMCOG to be biased against funding mass transit, which in turn violates the PWDCRA and plaintiffs' constitutional right to travel. Plaintiffs contend, as stated in their brief on appeal, that "SEMCOG has a duty under the [PWDCRA] to provide for public transportation for those with disabilities" and that defendant violates plaintiffs' constitutional right to travel by not adequately funding mass transit.

Plaintiffs identify themselves in their complaint as MOSES, Inc. (Metropolitan Organizing Strategy Enabling Strength), a coalition of faith-based nonprofit organizations operating in the Detroit and Wayne County areas; Transportation Riders United, Inc.

(TRU), a Detroit-based nonprofit organization that advocates for mass transit and other transportation issues; the city of Ferndale, a member of SEMCOG; Richard Bernstein and Anthony Fillipis, persons with disabilities who reside in southeast Michigan; Phyllis Williamson and Lawrence Birchfield, African-American residents of Detroit who use public transportation; and Marcia Yakes, a Detroit resident with disabilities who uses public transportation.

SEMCOG filed its motion for summary disposition pursuant to MCR 2.116(C)(8), and plaintiffs subsequently filed their motion for partial summary disposition pursuant to MCR 2.116(C)(10). The trial court heard oral arguments on the motions and subsequently authored an opinion stating its reasons for granting defendant's motion and denying plaintiffs'. The court entered its order accordingly on October 4, 2004.

In its opinion, the trial court first addressed count II, plaintiffs' constitutional claim. The court reasoned that the constitutional equal protection principle of one person, one vote, i.e., that each qualified voter has a right to cast a ballot that carries a weight equal to that of every other qualified voter, does not apply when government officials may lawfully be appointed to their positions. The court relied on *Sailors v Kent Co Bd of Ed*, 387 US 105, 111; 87 S Ct 1549; 18 L Ed 2d 650 (1967), which found no constitutional impediment to the appointment of state or local "nonlegislative officers." The *Sailors* Court determined that the board of education performs essentially administrative functions and because "the choice of members of the county school board did not involve an election and since none was required for

these nonlegislative offices, the principle of 'one man, one vote' has no relevancy." *Id*.

The trial court also relied on this Court's decision in *Van Zanen v Keydel*, 89 Mich App 377; 280 NW2d 535 (1979). That case considered an equal protection challenge to the appointment of commissioners to a multicounty park commission, the Huron-Clinton Metropolitan Authority (HCMA). The seven-member HCMA board consisted of two commissioners appointed by the Governor and five other commissioners, each of whom was appointed by the board of supervisors of one of the five participating counties. *Id*. at 379. The trial court noted that the HCMA possessed powers, including the ability to levy taxes and issue bonds, that were substantially similar to those of the board of education in *Sailors*. After surveying United States Supreme Court decisions applying the one person, one vote principle to state and local government, the *Van Zanen* Court concluded:

> In short, the one person-one vote doctrine applies to state and local government units which are composed of members elected by the voters. However, a state or local government may select some government officials by appointment. And where appointment is permissible, the one person-one vote doctrine does not apply. [*Id*. at 384.]

Applying the principles discussed in these cases to plaintiffs' equal protection claim, the trial court determined that it must fail because each member government lawfully appointed its representatives to SEMCOG. The trial court wrote:

> In the instant case, as a limited-purpose unit of local government with the purpose of regional planning, SEMCOG's powers and functions are substantially similar to those of the HCMA in *Van Zanen* or the board of education in *Sailors*. Moreover, SEMCOG actually lacks several of the

powers possessed by the HCMA. Specifically, SEMCOG is not empowered to levy taxes, condemn private property, or issue bonds. Furthermore, although SEMCOG is empowered to allocate about $1 billion in federal transportation funds, when determining whether appointment is constitutional, the Court examines the *nature* of the activities in which a governmental unit is engaged, not simply the *amount* of money that the governmental unit is entrusted to allocate. Accordingly, the Court finds that the one person-one vote doctrine does not apply to SEMCOG.

The trial court also rejected plaintiffs' argument that simply showing an action's disparate effect could prove a racial discrimination claim under Michigan's Equal Protection Clause, Const 1963, art 1, § 2. The court relied on *Harville v State Plumbing & Heating, Inc*, 218 Mich App 302, 318-319; 553 NW2d 377 (1996), which held that Michigan's Equal Protection Clause, "like the Fourteenth Amendment, prohibits only intentional or purposeful discrimination." Thus, "disparate effect, alone, is insufficient to demonstrate a violation of [Const 1963,] art 1, § 2." *Harville, supra* at 319. The trial court ruled that plaintiffs had merely alleged that SEMCOG was aware of the racial demographics of the area but took no action to alter its structure. The trial court determined that such "allegations [are] insufficient to show intentional discrimination because they do not address the possible motivational basis for SEMCOG's actions or inactions." Thus, the court concluded that plaintiffs had failed to state a claim for relief in count II because they did not allege intentional or purposeful racial discrimination.

The trial court next determined that plaintiffs had failed in count I to state a claim of racial discrimination in violation of § 302 of the CRA, MCL 37.2302. Plaintiffs MOSES, TRU, Yakes, Williamson, and Birchfield

brought this claim, but only the last two plaintiffs claimed to be members of the protected class, African-American residents of Detroit, so the trial court dismissed the CRA claims of the other plaintiffs.[1]

Regarding the merits of plaintiffs' CRA claims, the trial court recognized that a § 302 discrimination claim could successfully be established either by showing purposeful discrimination or by showing disparate impact, citing *Reisman v Regents of Wayne State Univ*, 188 Mich App 526, 538-539; 470 NW2d 678 (1991). But the court determined that plaintiffs neither pleaded nor factually supported a claim of intentional discrimination because, "[a]lthough plaintiffs have provided demographic data regarding the racial composition of Southeastern Michigan, that alone is insufficient to show that defendant has had a predisposition to discriminate against members of a protected class." With respect to plaintiffs' disparate impact claim, the trial court found that SEMCOG's voting structure is facially neutral and that plaintiffs had "not shown how this facially neutral practice burdened African-Americans more harshly than members of other racial groups as required to show a disparate impact." Further, the trial court ruled that plaintiffs had "failed to plead any causal connection between the voting structure of SEMCOG and the underdevelopment of mass transit." Accordingly, the trial court ruled that plaintiffs had failed in count I to state a claim of racial discrimination under § 302 of the CRA for which relief could be granted.

Next, the trial court addressed the claims of plaintiffs Bernstein, Fillipis, Williamson, and Yakes, who assert

---

[1] The trial court noted that MOSES and TRU failed to allege that they represented members of a protected class.

in count IV of plaintiffs' complaint that the racial discrimination alleged in counts I and II causes institutional bias by SEMCOG against funding mass transit, which in turn violates the PWDCRA by denying plaintiffs their civil right to "full and equal utilization of public accommodations, [or] public services," and denying plaintiffs their constitutional right to travel. The trial court observed that only Bernstein, Fillipis, and Yakes alleged any form of disability, but these plaintiffs failed to allege that their disabilities are unrelated to their ability to utilize and benefit from mass transit. Accordingly, citing *Miller v Detroit*, 185 Mich App 789, 792; 462 NW2d 856 (1990), the trial court ruled that plaintiffs had failed to state a claim on which relief could be granted.

The trial court also found that plaintiffs had failed to state a claim on which relief could be granted with respect to their constitutional right to travel. The trial court observed that in *Shavers v Attorney General*, 402 Mich 554, 613 n 37; 267 NW2d 72 (1978), our Supreme Court noted that "[t]he right to travel protects movement in the sense of migration, not the individual's choice of a particular means of transportation." Because plaintiffs "failed to allege in their complaint that SEMCOG's action or inaction in planning for or allocating funding for mass transit in Southeast Michigan has deprived plaintiffs of a right to migrate," the trial court ruled that "plaintiffs have failed to state a claim of violation of their right to travel . . . ."

The trial court next determined that the claims the city of Ferndale alleged in count III of plaintiffs' complaint must be dismissed because they "substantially mirror the claims of Counts I and II," which the court had already determined failed to state a claim for which relief could be granted.

The trial court declined to address the merits of plaintiffs' motion for partial summary disposition because it had already ruled that all of plaintiffs' claims lacked legal merit. Except as noted, the trial court did not address defendant's argument that plaintiffs lacked standing.

### II. STANDARD OF REVIEW

We review de novo several questions of law presented in this appeal, including whether plaintiffs have standing and the interpretation or application of statutes and constitutional provisions. *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co,* 471 Mich 608, 612; 684 NW2d 800 (2004); *Eggleston v Bio-Medical Applications of Detroit, Inc,* 468 Mich 29, 32; 658 NW2d 139 (2003). We also review de novo the trial court's decision on a motion for summary disposition. *Carmacks Collision, Inc v Detroit,* 262 Mich App 207, 209; 684 NW2d 910 (2004).

A party's motion for summary disposition brought under MCR 2.116(C)(8) tests the factual sufficiency of a claim on the basis of the pleadings alone. A court must grant the motion when no factual development could justify the asserted claim for relief. *Corley v Detroit Bd of Ed,* 470 Mich 274, 277; 681 NW2d 342 (2004).

### III. STANDING

Defendant observes that although the alleged underrepresentation of the city of Detroit in SEMCOG is central to plaintiffs' claims, the city has chosen for rational reasons not to join plaintiffs' lawsuit.[2] Defendant argues that plaintiffs lack standing. Defendant

---

[2] Defendant notes that although city residents comprise 20 percent of the population in the SEMCOG planning region, the city receives 30

asserts that the general rule of standing applies to plaintiffs: a party lacks standing to vindicate the constitutional rights of a third party. *People v Rocha*, 110 Mich App 1, 16-17; 312 NW2d 657 (1981). In addition, citing *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629, 633; 537 NW2d 436 (1995) (opinion by WEAVER, J.), defendant contends that plaintiffs lack standing because SEMCOG's structure and actions have not adversely affected plaintiffs' interests in a manner different from the manner in which the interests of the public at large are affected. To have standing, a party must demonstrate more than the ability to vigorously advocate; the party must also demonstrate it has a substantial interest that will be detrimentally affected in a manner different from the interests of the public at large. *Id.*

In summary, defendant argues that plaintiffs cannot establish the elements necessary to demonstrate standing; therefore, they cannot raise the claims asserted in their complaint. According to defendant, plaintiffs (1) have suffered no harm greater than that to the public at large, (2) lack a substantial relationship to the city to permit their vicariously asserting any rights the city may have but would be unable to assert, (3) have failed to substantiate an "injury in fact," and (4) have failed to demonstrate that a proposed remedy—increased voting power of the city as a member of SEMCOG—would result in greater funding of mass transit.

Plaintiffs, of course, disagree. Plaintiffs contend they have standing to bring a declaratory judgment action testing SEMCOG's structure, citing *House Speaker v Governor*, 443 Mich 560, 572-573; 506 NW2d 190 (1993). In *House Speaker*, our Supreme Court held that

percent of available federal transportation funds. Also, Detroit is the only city member of SEMCOG with direct voting power on the executive committee.

the nonprofit corporate plaintiffs, the Michigan United Conservation Clubs and the Michigan Environmental Protection Foundation, had standing under MCR 2.201(B)(4)[3] to contest the alleged illegal expenditure of state funds resulting from the Governor's executive order creating a "new" department of natural resources.

Plaintiffs also argue they satisfy the three-part test for standing stated in *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726, 739-740; 629 NW2d 900 (2001), citing *Lujan v Defenders of Wildlife*, 504 US 555, 560-561; 112 S Ct 2130; 119 L Ed 2d 351 (1992). The *Lujan* Court articulated that to have standing (1) a plaintiff must have suffered "an injury in fact," that is, an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct at issue; and (3) it must be likely that the injury will be redressed by a favorable decision. *Id.* Plaintiffs argue they satisfy this test for standing because (1) the "injury in fact" is that the voting structure of SEMCOG effectively silences "those with the greatest transportation issues . . . "; (2) a casual connection exists between the voting structure of SEMCOG and a diminished voice for Detroit residents, 85 percent of whom are African-

---

[3] MCR 2.201(B)(4) provides:

An action to prevent illegal expenditure of state funds or to test the constitutionality of a statute relating to such an expenditure may be brought:

(a) in the name of a domestic nonprofit corporation organized for civic, protective, or improvement purposes; or

(b) in the names of at least 5 residents of Michigan who own property assessed for direct taxation by the county where they reside.

American; and (3) the court can remedy the problem by ordering SEMCOG to increase the number of votes accorded to Detroit.

We agree with defendant: plaintiffs lack standing. In general, standing requires more than having a "personal stake" in the outcome of litigation sufficient to ensure vigorous advocacy. It requires " 'one [to have] in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy.' " *Bowie v Arder*, 441 Mich 23, 42; 490 NW2d 568 (1992), quoting 59 Am Jur 2d, Parties, § 30, p 414 (1987 ed). Thus, to have standing, a plaintiff must demonstrate that his or her substantial interest will be detrimentally affected in a manner different from the citizenry at large. *Detroit Fire Fighters, supra* at 633-634 (opinion by WEAVER, J.), 643 (RILEY, J., concurring), 662 (MALLET, J., concurring in the result only). An organization will have standing to advocate the interests of its members "where the members themselves have a sufficient stake or have sufficiently adverse and real interests in the matter being litigated." *Trout Unlimited, Muskegon-White River Chapter v City of White Cloud*, 195 Mich App 343, 348; 489 NW2d 188 (1992). In other words, "organizations . . . have standing to bring suit in the interest of their members where such members would have standing as individual plaintiffs." *Nat'l Wildlife, supra* at 629.

However, whether a plaintiff is an individual or an association, the rule of MCR 2.201(B) nonetheless applies: "An action must be prosecuted in the name of the real party in interest . . . ." The alleged underrepresentation of the city of Detroit in relation to its population is at the core of plaintiffs' complaint, but plaintiffs do not allege that they have been authorized to prosecute

this claim on the city's behalf. "A real party in interest is one who is vested with a right of action in a given claim, although the beneficial interest may be with another." *Rohde v Ann Arbor Pub Schools*, 265 Mich App 702, 705; 698 NW2d 402 (2005). Here it is the city that enjoys the right of representation in SEMCOG's governing structure, even though the city's citizens may ultimately benefit from that representation through improved funding for public services. Accordingly, unless the individual plaintiffs have alleged a particularized injury to a legally protected right they individually possess rather than an injury common to the citizenry at large, they have failed to satisfy the first element of the three-part test to establish standing:

> "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... traceable to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " [*Nat'l Wildlife, supra* at 628-629, quoting *Lee, supra* at 739, quoting *Lujan, supra* at 560-561.]

On these facts, the individual plaintiffs lack standing because they have not alleged an "injury in fact" to a legally protected interest, and the organizational plaintiffs lack standing because they have failed to allege that any of their members have suffered an injury to a legally protected interest that allows the organizations to gain standing vicariously. *Nat'l Wildlife, supra* at 629; *Trout Unlimited, supra* at 348. Plaintiffs' claim that MCR 2.201(B)(4) creates standing here likewise

fails. Plaintiffs' complaint neither seeks to "prevent illegal expenditure of state funds" nor to "test the constitutionality of a statute relating to such an expenditure . . . ." Plaintiffs' claims sound in civil rights, not appropriations, and therefore do not fit through this narrow loophole into standing.

We also reject plaintiffs' argument that filing an action for declaratory relief enhances their argument in favor of standing. The declaratory judgment rule, MCR 2.605, neither limits nor expands the subject-matter jurisdiction of the courts, but instead incorporates "traditional restrictions on justiciability such as standing, ripeness, and mootness." *Associated Builders & Contractors v Dep't of Consumer & Industry Services Director*, 472 Mich 117, 125; 693 NW2d 374 (2005).

We conclude that plaintiffs here lack standing on any ground, individually and collectively.

### IV. "INJURY IN FACT"

#### A. EQUAL PROTECTION CLAIM

In count II of their complaint, plaintiffs allege that affording the city of Detroit less voting power in SEMCOG than the city's proportionate share of population might dictate denies the city's African-American residents the equal protection of the laws guaranteed by Const 1963, art 1, § 2.[4] Plaintiffs apparently concede that the trial court correctly ruled that the constitutional principle of one person, one vote does not apply to SEMCOG because its constituent

---

[4] "No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation." Const 1963, art 1, § 2.

governmental units lawfully appoint their representatives to that body. See *Van Zanen, supra* at 384. Plaintiffs point to no legal authority, other than the principle of one person, one vote, by which Detroit or its citizens of whatever religion, race, color, or national origin would enjoy a legally protected right to greater representation in the governance of SEMCOG.

> It is not enough for an appellant in his brief simply to announce a position or assert and error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. [*Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).]

If a party fails to adequately brief a position, or support a claim with authority, it is abandoned. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Accordingly, plaintiffs have no standing to assert an equal protection claim under Const 1963, art 1, § 2 because they have failed to establish a legally protected interest that has been adversely affected.

### B. RACIAL DISCRIMINATION CLAIM

Plaintiffs argue they have stated a claim of racial discrimination under the second clause of Const 1963, art 1, § 2 because the racial demographics of southeast Michigan are well known, and SEMCOG has refused to accord Detroit greater representation in its governance. We disagree.

Initially we note our agreement with the trial court that a racial discrimination claim under the second clause of Const 1963, art 1, § 2 cannot be established on the basis of a disparate effect alone. *Harville, supra* at 319. Moreover, this Court must follow the rule of law established by a prior published decision of this Court

issued on or after November 1, 1990. MCR 7.215(J)(1); *Horace v City of Pontiac,* 456 Mich 744, 754; 575 NW2d 762 (1998). We also agree with the trial court that plaintiffs have simply not alleged purposeful or intentional racial discrimination on the basis of known area demographics and the refusal of SEMCOG to accord Detroit greater clout in its organizational structure. " ' "Discriminatory purpose" . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.' " *Harville, supra* at 308, quoting *Personnel Administrator of Massachusetts v Feeney,* 442 US 256, 279; 99 S Ct 2282; 60 L Ed 2d 870 (1979). Here, plaintiffs' complaint, read in the light most favorable to plaintiffs, at best alleges that SEMCOG reaffirmed a course of action "in spite of" its alleged adverse impact on an identifiable group.

More important, and fatal to plaintiffs standing to assert a racial discrimination claim under either Const 1963, art 1, § 2 or § 302 of the CRA, MCL 37.2302, is that Detroit residents have no fundamental right to directly elect the city's representatives to SEMCOG. *Van Zanen, supra* at 384; see, also, *Moore v Detroit School Reform Bd,* 293 F3d 352, 365 (CA 6, 2002) ("[C]itizens do not have a fundamental right to elect nonlegislative, administrative officers such as school board members."). Indeed, as noted earlier, plaintiffs concede as much by abandoning any claim that the constitutional principle of one person, one vote applies to SEMCOG. Therefore, plaintiffs' underlying vote-dilution claim fails.

Furthermore, plaintiffs' claims are based on two more false premises. First, that the city of Detroit is

entitled to greater representation in SEMCOG's governing structure on the basis of its population. Plaintiffs have failed to support such a claim. Moreover that argument fails for the reason that Detroit's citizens have no right to directly elect the city's representatives to SEMCOG. Second, plaintiffs argue that Detroit is the alter ego of its residents and embodies the racial characteristics of its majority racial group.[5] On this basis, plaintiffs argue that disparate treatment of Detroit equates to a disparate impact on or treatment of its major racial group, African-Americans. Again, plaintiffs fail to support this premise with any legal authority; consequently, they have abandoned it. *Mitcham, supra* at 203; *Yee, supra* at 406. Further, opposite authority exists. See *Hearne v Chicago Bd of Ed*, 185 F3d 770, 776 (CA 7, 1999) (rejecting disparate impact racial discrimination claims against Illinois legislation aimed at reforming Chicago's school system).

Even if Detroit could assert a right to a greater voice in the governance of SEMCOG, the effect of the denial of such a right would fall equally on all of Detroit's residents of whatever religion, race, color, or national origin. Accordingly, there is no discrimination "because of . . . race" either in SEMCOG's structure or the representation accorded to Detroit. Const 1963, art 1, § 2; *Harville, supra* at 315-319.

Likewise, plaintiffs cannot establish either a disparate impact or disparate treatment racial discrimination claim under § 302 of the CRA, MCL 37.2302. To establish a disparate treatment racial discrimination claim, plaintiffs "must show that [at least one of the plaintiffs] was a member of the class entitled to protection under the act [here, African-Americans] and that he [or she]

---

[5] Plaintiffs assert in their brief that " 'Detroit' is a proxy for 'African-American.' "

was treated differently than persons of a different class for the same or similar conduct." *Reisman, supra* at 538. To establish a disparate impact racial discrimination claim, plaintiffs must show that "a facially neutral employment practice burdens a protected class of persons more harshly than others." *Id.* at 539. But in this case, the alleged disparate treatment or disparate impact resulting from the alleged underrepresentation accorded Detroit falls equally on all of Detroit's residents. Consequently, plaintiffs lack standing because they have not alleged " 'an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " ' " *Lee, supra* at 739, quoting *Lujan, supra* at 560.

### C. PLAINTIFFS' REMAINING CLAIMS

The plaintiffs with disabilities, in count IV, and the city of Ferndale, in count III, raise primarily public policy questions regarding governmental spending priorities. As a threshold matter, because even the plaintiffs who are African-American Detroit residents lack standing to assert the alleged racial discrimination and vote-dilution claims of counts I and II, so too the disabled plaintiffs and the city of Ferndale lack standing to assert those claims. Concerning the claims relating to funding allocation in counts III and IV, even if SEMCOG were ordered to change its allegedly discriminatory structure, such a remedy would not guarantee plaintiffs' ultimate goal: increased funding for mass transit. Thus, plaintiffs also fail to satisfy the third element of the three-part test to meet the constitutional minimum requirements for standing, that " 'it must be "likely," as opposed to merely "speculative," that the injury will be "re-

dressed by a favorable decision." ' " *Nat'l Wildlife,* *supra* at 629, quoting *Lee, supra* at 739, quoting *Lujan, supra* at 561.

Additionally, plaintiffs in count IV have failed to satisfy the first element of standing by alleging an "injury in fact" or an invasion of a legally protected interest. Article 3 of the PWDCRA prohibits the denial of the

> full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids. [MCL 37.1302(a).]

Further, the PWDCRA requires that "a person shall accommodate a person with a disability for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship." MCL 37.1102(2). Thus, when a person offers goods or services to the public, the PWDCRA imposes an affirmative duty to accommodate disabled persons if accommodation can be accomplished without undue hardship on the person offering the goods or services to the public. *Id.*; *Cebreco v Music Hall Ctr for the Performing Arts, Inc,* 219 Mich App 353, 359-360; 555 NW2d 862 (1996). Nevertheless, nothing in the PWDCRA imposes a duty on a person, in this case a governmental agency, see MCL 37.1103(g), to provide a public service in the first instance because the service, mass transit, might benefit persons with disabilities. Consequently, plaintiffs do not satisfy the first element of standing because they have not suffered an "injury in fact" to a legally protected interest. *Lee, supra* at 739.

For the same reason, plaintiffs lack standing with respect to the claim involving their constitutional right to travel. The trial court correctly ruled that the constitutional right to travel does not impose on the government any obligation to provide its citizens with any particular mode of transportation. *Shavers, supra* at 613 n 37. "The right to travel protects movement in the sense of migration, not the individual's choice of a particular means of transportation." *Id.*

## V. CONCLUSION

In summary, we hold that plaintiffs lack standing because they have individually and collectively failed to allege a concrete, particularized, and actual rather than speculative injury in fact or an invasion of a legally protected interest that would be redressed by the remedies sought.

Although plaintiffs contend that the trial court erred procedurally by not allowing plaintiffs to amend their complaint or conduct further discovery, they do not suggest that the essence of their complaint would be altered if such requests were granted. Consequently, we conclude that granting a motion to amend would be futile. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 53; 684 NW2d 320 (2004). Likewise, because further discovery would not likely uncover facts to support plaintiffs' nonjusticiable claims, summary disposition was appropriate. See *VanVorous v Burmeister*, 262 Mich App 467, 478-479; 687 NW2d 132 (2004), and *Peterson Novelties, Inc v City of Berkeley*, 259 Mich App 1, 25; 672 NW2d 351 (2003).

In the course of reviewing whether plaintiffs have satisfied the constitutional requirement of standing by alleging an "injury in fact," we have, like the trial court, addressed the merits of whether plaintiffs have stated claims for which relief may be granted. Generally, we

agree that the trial court reached the correct result by concluding that plaintiffs have not stated claims for which relief may be granted. We will affirm the trial court when it reaches the correct result even if for a wrong or different reason. *Gleason v Dep't of Transportation*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

We affirm.