*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* N. K. Colbert, Minor.

UNPUBLISHED
February 22, 2024

No. 367018
Wayne Circuit Court
Family Division
LC No. 2021-001017-NA

Before: PATEL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent[1] appeals as of right the order terminating his parental rights to his minor child, NKC, under MCL 712A.19b(3)(a)(*ii*) (desertion for 91 or more days without seeking custody) and (j) (reasonable likelihood based on parent's conduct child will be harmed). We affirm.

## I. BACKGROUND

Respondent is the legal father of NKC. In May 2021, Child Protective Services (CPS) investigated allegations that respondent sexually abused JA, the son of respondent's girlfriend. JA is unrelated to NKC, and was six years old at the time of the alleged sexual abuse. During a June 2021 KidsTALK interview, JA disclosed to forensic interviewer, Eboni Mathis, details of respondent's sexual abuse of JA and his brother, JF. Mathis also interviewed JF who reported that respondent inappropriately touched JA.

In October 2021, the Department of Health and Human Services (DHHS) filed a petition to terminate respondent's parental rights under MCL 712A.19b(3)(a)(*ii*), (g) (parent fails to provide proper care or custody), and (j). The petition alleged that respondent sexually abused JA and JF, abandoned NKC after failing to visit or contact her for over four years, and was the perpetrator in a domestic violence incident involving his former significant other and her two children. Following the preliminary hearing, the trial court authorized the petition, placed NKC

---

[1] The petition in this case did not name NKC's mother as a respondent and the mother is not a party to this appeal. Accordingly, we simply refer to respondent-father as "respondent" and non-respondent mother as "the mother."

within the care and custody of the DHHS, released NKC to the non-respondent mother, and suspended respondent's parenting time.

The DHHS moved under MCR 3.972(C)(2) to admit statements JA made to Mathis during the KidsTALK forensic interview regarding the sexual abuse. The DHHS argued that the statements JA made to Mathis satisfied the criteria for admissibility set forth in MCR 3.972(C)(2). The trial court conducted a tender-years hearing. Mathis testified that JA disclosed specific acts of sexual abuse that respondent committed while JA's mother was at work. Mathis testified that JA was able to identify body parts and could tell the difference between a truth and a lie. The trial court granted the motion, allowing for the admission of JA's statements into evidence at trial. The DHHS requested that Mathis's testimony from the tender years' hearing be incorporated into the adjudication to avoid duplicity. The guardian ad litem and respondent had no objection to the request, which was ultimately granted by the trial court.

At the adjudication trial, DHHS employee, Elysia Perez-Sandoval, testified that respondent was not "actively visiting and supporting [NKC]." In fact, NKC told Perez-Sandoval that she had not seen her father in approximately four or five years. Perez-Sandoval confirmed there was a Friend of the Court matter "in which the mother was given sole legal and sole physical custody of [NKC]." Respondent admitted to Perez-Sandoval that he had not visited NKC, but maintained that NKC's mother was not allowing him to see NKC. But there was no evidence that respondent made any effort to obtain parenting time. Perez-Sandoval stated that "the nature of the allegations of sexual abuse" of JA, coupled with the fact respondent "has not been active in [NKC's] life for quite some time" necessitated the filing of the termination petition. Perez-Sandoval admitted that there was no evidence that respondent abused NKC, but opined that respondent's treatment of JA was probative of how he would treat NKC.

The trial court found by a preponderance of the evidence that it had jurisdiction over NKC pursuant to MCL 712A.2(b)(1) and (2) and that there was clear and convincing evidence that respondent's parental rights should be terminated under MCL 712A.19b(3)(a)(*ii*) and (j) based on respondent's failure to visit NKC for over four years or seek custody of her, and his sexual abuse of JA. Respondent was referred to the Clinic for Child Study for a best interests evaluation.

The clinic report was admitted into evidence at the best interests hearing. The clinician noted that respondent referred to the sexual abuse allegations and criminal sexual conduct (CSC) charges as "one little mistake[.]" The clinician opined that respondent's "failure to take responsibility for his actions, lack of remorse, and refusal to be accountable for his behaviors increase the likelihood of something similar happening in the future." In addition, respondent reported that he was financially supported and dependent on family and others, which meant he could not provide for NKC physically or financially. The forensic family clinician opined that it was in NKC's best interest that respondent's parent rights be terminated.

Perez-Sandoval agreed with the clinician's recommendations. Perez-Sandoval testified that NKC, who was nine years old at the time of the hearing, reported that she had not seen her father since she was four. Perez-Sandoval stated there was no evidence of a bond between NKC and respondent.

NKC's mother testified that respondent has not seen or had any contact with NKC since she was four years-old. Although respondent and NKC exhibited a good bond during the few occasions when respondent last visited with her five years ago, NKC's mother stated there was currently no bond between NKC and respondent. NKC has not asked to see respondent. Some time before the petition was filed in October 2021, NKC asked what respondent looked like, but she did not recognize him when her mother showed her photograph of him. NKC's mother maintained that she has never kept NKC from respondent; it "was his choice to not be in her life." NKC's mother stated she made multiple attempts to facilitate visitation with respondent and NKC, but "he failed to come through." Respondent had an opportunity to advocate for parenting time in the family court matter, but he failed to appear for several court hearings. She asserted that respondent had "all these opportunities to be in her life, and he chose not to." NKC's mother also claimed respondent was physically abusive to her when she was three months pregnant with NKC. Shortly after NKC's fifth birthday, respondent threatened to kill NKC's mother and take NKC from her after he discovered NKC's mother was engaged. That was the last time NKC's mother heard from respondent.

Respondent testified, stating he was currently in jail awaiting trial on the CSC charges. He maintained his innocence. Respondent claimed NKC's mother kept him from visiting NKC by refusing to answer her phone and changing her Facebook page. Respondent asserted that he had paid $100 in weekly child support for approximately five or six years, and was employed before his incarceration. Respondent stated he loved NKC and was willing to plan for her. On cross-examination, respondent admitted he was incarcerated from 2015 to 2017, and his incarceration, not any actions by NKC's mother, prevented him from seeing NKC during that time. He also admitted he had not seen NKC in approximately five years, had several criminal convictions, and made no efforts to enforce parenting time through the family court.

The trial court found termination was in NKC's best interests based on the lack of bond between respondent and NKC, respondent's failure to pursue visitation with NKC for five years, NKC's age and need for permanency and stability, respondent's criminal history, and his sexual abuse of JA. The court recognized NKC's relative placement with her mother, but given the history of domestic violence between respondent and NKC's mother, the court concluded that it was in NKC's best interests to terminate respondent's parental rights. This appeal followed.

## II. STATUTORY GROUNDS

Respondent argues there was insufficient evidence to terminate his parental rights. We disagree.

We review a trial court's factual findings regarding statutory grounds for termination of parental rights and the decision to terminate parental rights for clear error. MCR 3.977(K); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (cleaned up). The trial court found that statutory grounds for termination existed under MCL 712A.19b(3)(a)(*ii*) and (j). Respondent does not identify what statutory grounds were erroneously found by the trial court. Regardless, if at least one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(j) if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." The record supports the trial court's finding that clear and convincing evidence exists for terminating respondent's parental rights pursuant to MCL 712A.19b(3)(j). Perez-Sandoval testified at length regarding specific acts of sexual abuse that six-year-old JA disclosed that respondent committed while JA's mother was at work.[2] As the boyfriend of JA's mother, respondent was in a position to care for and protect JA while JA's mother was at work. Respondent took advantage of his role and committed heinous acts of sexual abuse against JA. "The doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children." *In re MOTA*, 334 Mich App 300, 323; 964 NW2d 881 (2020). Although JA is not respondent's child, respondent's abuse of JA was "an especially egregious violation of a child who had looked to respondent for care and protection as a father figure." *Id*. at 322. Respondent's treatment of JA is probative of how he may treat eight-year-old NKC. *Id*. Although there was no evidence that respondent abused NKC, respondent also had not seen NKC in more than four years at the time of the termination hearing. We are not left with a definite and firm conviction that the trial court made a mistake concluding, based on respondent's sexual abuse of JA, there was a reasonable likelihood that respondent would harm NKC if she were placed in his care. Accordingly, the trial court did not clearly err by finding that termination was proper under MCL 712A.19b(3)(j). *In re Sanborn*, 337 Mich App at 276.

Because the trial court did not err by holding that statutory grounds for termination had been proven under MCL 712A.19b(3)(a)(j), we need not address its holding regarding statutory grounds for termination under MCL 712A.19b(3)(a)(*ii*). *Foster*, 285 Mich App at 633.

---

[2] Respondent argues in one sentence that the trial court "abused its discretion in using the statements made during the forensic interview." But he does not cite any supporting authority or elaborate on his argument. Further, this issue is not contained in respondent's statement of questions presented. We conclude that respondent has abandoned or waived any claim of error and we decline to review this issue. See *MOSES, Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006) ("If a party fails to adequately brief a position, or support a claim with authority, it is abandoned."); see also *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004) ("An issue not contained in the statement of questions presented is waived on appeal."). Waiver extinguishes any error and precludes appellate review. *The Cadle Co v Kentwood*, 285 Mich App 240, 255, 776 NW2d 145 (2009).

## III. BEST INTERESTS

Respondent also argues the trial court clearly erred by finding termination of his parental rights was in NKC's best interests because it failed to consider that NKC was placed with her mother and there were less restrictive means of promoting NKC's welfare. We disagree.

"We [] review for clear error a trial court's decision that termination is in a child's best interests." *In re Jackisch/Stamm-Jackisch Minors*, 340 Mich App 326, 333; 985 NW2d 912 (2022). Issues of constitutional law are likewise reviewed de novo. *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017).

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5). The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). Factors to be considered for purposes of the best-interest analysis include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (cleaned up). A court may also consider whether it is likely that a child could be returned to a parent's home "within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). Because a child's placement with a relative militates against termination, see MCL 712A.19a(8)(a), "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *Olive/Metts*, 297 Mich App at 43.

Here, a preponderance of the evidence in the record supports that termination was in NKC's best interests. NKC was nine years old at the time of the best interests hearing. Respondent admitted that he had not seen NKC in five years. NKC's mother testified that there was no bond between NKC and respondent. NKC did not ask to see respondent. And when NKC asked her mother what respondent looked like, she did not recognize him when her mother showed her photograph of him. Although respondent claimed he was unable to see NKC because he was unable to contact NKC's mother, he also admitted that he made no effort to pursue parenting time through family court and acknowledged that his prior incarceration kept him from seeing NKC. Respondent has an extensive criminal history and, at the time of the best interests hearing, was incarcerated and awaiting trial on the CSC charges from his sexual abuse of JA. Respondent also had a substantiated CPS investigation for pulling a gun on an ex-girlfriend and her children. Further, respondent was physically abusive to NKC's mother when she was three months pregnant with NKC and threatened to kill NKC's mother. The trial court expressly acknowledged that NKC was placed with her mother, who had sole legal and physical custody, but found termination was in NKC's best interests given the history of domestic violence. The court stated that respondent would likely be highly disruptive in NKC's life because he would engage in threatening and violent behavior toward NKC's mother and fiancé if he was exonerated or served his time and was

-5-

released. And this disruption was not in NKC's best interests. The trial court also noted respondent never took any steps to pursue custody of NKC at any point in her life, and concluded it was unlikely he ever would. We conclude that the trial court did not clearly err in finding that termination of respondent's parental rights was in NKC's best interests

Respondent claims he was denied due process under the United States and Michigan Constitutions because the trial court failed to consider less restrictive alternatives, such as a custody order granting respondent parenting time, before concluding that termination was in NKC's best interests. Respondent did not raise his arguments regarding due process concerns or the failure to consider less restrictive alternatives to termination before the trial court and thus they are unpreserved. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008) (noting issues are preserved if they are raised before the trial court). We review unpreserved issues for plain error. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021).[3] "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* (cleaned up). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id.* (cleaned up).

Respondent does not cite any precedential authority to support his constitutional argument. Indeed, a parent has a significant interest in the companionship, care, custody, and management of a child, which has been characterized as an element of liberty to be protected by due process. See *In re Brock*, 442 Mich. 101, 109; 499 NW2d 752 (1993). But once the trial court found clear and convincing evidence establishing at least one statutory ground for termination of respondent's parental rights under MCL 712A.19b(3), respondent's liberty interest no longer included the right to custody and control of his child. *In re Trejo*, 462 Mich 341, at 355-356; 612 NW2d 407 (2000).

Respondent's argument is also premised upon an egregious misstatement of the facts. Respondent contends that the DHHS should have pursued a custody order for the non-respondent mother as a less restrictive means than termination of respondent's parental rights:

> Here, a custody order was available as an alternative to termination. Child has been living in non-Respondent's home since she was removed from Respondent Parent's care. Non-Respondent Parent has expressed her interest in making this arrangement more permanent and in securing a custody order. She has even spoken with caseworkers about initiating this process.
>
> . . . . Caseworkers also reported that [NKC's] regular visits with Respondent Parent improved her mood and behavior at home. Severing the parent-child bond completely was not necessary to promote Child's welfare. Rather, the record suggests that a custody order would have been better for the Child's well-being

---

[3] See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op. at 5 n 3 (indicating, although the plain-error rule is not applicable in civil cases, it is applicable in termination of parental rights cases, which involve different constitutional considerations); *Ayotte v Dep't of Health & Human Servs*, 337 Mich App 29, 40; 972 NW2d 282 (2021).

because it would have allowed Respondent Parent and Child to continue their visits and to maintain a positive relationship. . . .

This is a complete misstatement of the facts. There was already a permanent custody arrangement when the DHHS filed the petition: NKC's mother had sole physical and legal custody of NKC. And NKC did not have "regular visits" with respondent during these proceedings. Respondent admitted that he had not seen NKC in five years and he made no effort to seek a parenting time order from the family court. The trial court expressly considered the custody arrangement and still found termination was in NKC's best interests. We conclude that the trial court did not clearly err in finding that termination of respondent's parental rights was in NKC's best interests.

Affirmed.

/s/ Sima G. Patel
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan