PLASGER *v.* LEONARD.

1. MORTGAGES—DISCHARGE—CONSIDERATION—FINDING OF COURT.

Finding of court in suit to foreclose a mortgage and cancel a discharge thereof, that the discharge had been obtained without any consideration and· upon the express promise that a new mortgage would be given, *held,* correct under record presented.

2. SAME—RELEASE—LACK OF CONSIDERATION.

Generally the release of a mortgage may be rendered inoperative by a lack of consideration therefor.

3. SAME—DISCHARGE—FAILURE OF CONSIDERATION—EQUITY.

Equity will, except where the rights of third parties may prevent, cancel or set aside, or simply disregard, a release or satisfaction of a mortgage procured from the mortgagee by means of promises which have not been fulfilled.

4. SAME—DISCHARGE—INNOCENT PURCHASERS FOR VALUE—FINDING OF COURT.

In suit to foreclose a mortgage and to. set aside a discharge thereof, record sustained finding of trial judge that subsequent purchasers of the farm were not innocent purchasers, for value but took with notice of the mortgage lien and invalidity of the discharge, where it appears they were related to the mortgagors and lived with latter for several years during which time there were various transactions relative to the title of the farm in which the purchasers actively participated.

5. SAME—FORECLOSURE—LIMITATION OF ACTIONS.

Bill to foreclose mortgage was timely filed where less than 15 years had elapsed since due date of mortgage (3 Comp. Laws 1929, § 13975).

6. EQUITY—LACHES—LAPSE OF TIME.

While evidence of lapse of time should be considered with other facts and circumstances of a case in determining laches, laches will not be permitted to defeat recovery in equity if it would . be inequitable to do so.

7. MORTGAGES—FORECLOSURE—SETTING ASIDE DISCHARGE—LACHES
   —EVIDENCE.
   In suit to foreclose mortgage and cancel a discharge which was
   found to have been ineffective, evidence failed to sustain
   laches as claimed by mortgagors and purchasers.

Appeal from Allegan; Souter (Dale), J., presiding. Submitted October 10, 1946. (Docket No. 49, Calendar No. 43,495.) Decided December 2, 1946. Rehearing denied January 6, 1947.

Bill by Benjamin F. Plasger and wife against Earl C. Leonard and others to foreclose a mortgage. Decree for plaintiffs after remand for further proofs. Defendants appeal. Affirmed.

*Lokker & Den Herder,* for plaintiffs.

*Frederick T. Miles* and *Harry Pell,* for defendants.

NORTH, J. This appeal by defendants is from a decree in the Allegan county circuit court in chancery by which in effect a discharge of a real estate mortgage was cancelled, the mortgage debt together with accrued interest and costs was decreed to be paid, and in default the mortgage decreed to be foreclosed. Much of the factual background of the instant case appears in *Plasger* v. *Leonard,* 312 Mich. 561. Our opinion on rehearing the cited case provides:

"The case is remanded for the purpose of the circuit court passing upon the question whether the discharge of an earlier mortgage given on or about December 1, 1933, by defendants Leonard to plaintiffs should be set aside, and if so set aside whether a decree of foreclosure of said earlier mortgage should be entered as asked for by plaintiffs (cross-defendants) in their reply to defendants' answer and in their answer to defendants' (cross-plaintiffs') cross bill. Amended pleadings may be

filed by the parties so as to more definitely present these issues not passed upon by the trial judge or decided on this appeal.''

Following the remand, amended pleadings were filed and additional proofs taken, resulting in the decision above indicated. In brief, plaintiffs' amended pleadings allege that the discharge dated May 18, 1935, of the $1,000 mortgage theretofore given to plaintiffs by the Leonards, was procured by Earl Leonard ''without any consideration being given to the plaintiffs for the same.'' In defendants' amended joint answer it is admitted that no money consideration passed for the execution of the discharge, but the amended answer alleges ''that there was a contractual mutuality to both parties'' which constituted consideration for the discharge. Earl Leonard testified: ''No, I never paid these people (plaintiffs) anything on that $1,000 note.'' Our review of the record satisfies us that the trial judge was correct in finding ''that the discharge of the mortgage * * * was obtained without any consideration and upon the express promise that a new mortgage would be given.'' Leonard has never given plaintiffs any other mortgage security in lieu of the discharged mortgage.

''The general rule is that the release of a mortgage may be rendered inoperative by a lack of consideration therefor.'' 36 Am. Jur. p. 924.

''Equity will, except where the rights of third persons may prevent, cancel or set aside, or simply disregard, a release or satisfaction of a mortgage * * * which was procured from the mortgagee * * * by means of promises which have not been fulfilled.'' 41 C. J. p. 822.

In accord with the foregoing see *Wood* v. *DePew*, 250 Mich. 375. Under the record in this case, as

between defendants Leonard and plaintiffs there can be no question about the latter's right to have the discharge of the $1,000 mortgage cancelled and the mortgage reinstated.

The defendants Preston are parties to this litigation because they allege that they are innocent holders for a valuable consideration of the fee title to the farm covered by the $1,000 mortgage given by the Leonards to the plaintiffs, that at the time the Prestons acquired such title the discharge of the $1,000 mortgage was a matter of record and they relied thereon. Thus the question is presented as to whether defendants Preston are innocent bona fide purchasers as alleged, or whether, as plaintiffs claim in their amended pleadings, the Prestons are not good faith purchasers for value but instead the property still belongs to the Leonards and the Prestons are merely holding the record title in "a further attempt on the part of the defendants to defraud the plaintiffs." In this connection the following appears in plaintiffs' amended pleadings:

"Plaintiffs allege that at the time, viz., June 20, 1944, that the said Walter W. Preston and Katherine E. Preston claimed to have purchased said property, they had full knowledge of the indebtedness of the said Leonards to the said plaintiffs."

As bearing upon the good faith and claimed lack of knowledge on the part of defendants Preston, the following disclosed by the record has a very persuasive bearing. Mrs. Leonard and Mrs. Preston are sisters. The Leonards took title to and occupied the mortgaged property many years ago. For at least upwards of five years prior to the time the Prestons took a deed to the farm on June 20, 1944, they lived there with the Leonards. Notwithstanding from February, 1939, to June, 1944, the record title to the Leonard farm was held by George Link and

wife, who resided in Chicago, the deed held by them was merely security for a loan to Leonard of $1,800. Subject to this encumbrance the Leonards were in fact the actual owners of the property at the time the Prestons took a deed from Mr. and Mrs. Link. During the years that the Links held their deed they did not live on the farm, and so far as disclosed by the record they did not operate or control it in any way. Mr. Link visited the place only two or three times while the record title was held by him and his wife. Just why Leonard placed the record title of the property in the Links is problematical. Preston claims that at the time he and his wife took a deed from Mr. and Mrs. Link, he paid from his own funds the $1,800 Link had loaned Leonard. Preston also claims that a few months after his purchase in June, 1944, he also paid from his own funds a balance of $1,800 on a mortgage held by the Holland State Bank on this same 40-acre farm. Plaintiffs' claim is that the above were merely transactions in behalf of defendants Leonard and financed by them through Preston.

Just prior to his claim of purchase, June 20, 1944, and on May 1st or 2d, 1944, Preston visited the office of Attorney Cross who represented plaintiffs in an effort to collect the debt of the Leonards to plaintiffs. In that connection Preston on cross-examination testified:

"*Q.* When you were in Mr. Cross' office you had some discussion with him about this thousand dollar mortgage that had been given and discharged, did you not? * * * You knew about it, didn't you?

"*A.* I knew from that information, yes. He might have said something about it, but I didn't see it. * * * I saw the $1,200 transfer of mortgage (given) to the Holland State Bank to Mr. and Mrs. Plasger, that is all I remember.

"*Q.* Wasn't it explained to you by Mr. Cross that the mortgage subsequently to the Holland State Bank had been assigned to replace the $1,000 mortgage? * * *

"*A.* He told me that he transferred that. * * *

"*Q.* But when you bought this property on June 20th, you had all the knowledge concerning the transactions as between the Leonards and Mr. Plasger and his wife, did you not?

"*A.* I heard it here on the stand, yes. * * *

"*Q.* And you knew there was an assignment of the mortgage that had been given to the Holland State Bank, didn't you, the day you were at Cross' office?

"*A.* Yes, I knew.

"*Q.* And you knew that $1,000 had never been paid, didn't you?

"*A.* Sure, I knew it hadn't been paid."

Further, because of the intimate family relation between the Leonards and the Prestons and the participation of Walter Preston in Leonard's business affairs, it is certainly a very reasonable inference from the record that at the time of the alleged purchase of the farm by the Prestons in June, 1944, Walter Preston knew that the pending litigation which involved the right of plaintiffs herein to enforce a mortgage lien on the farm had not been adjudicated. That litigation had been instituted only a few days prior to the claimed purchase by the Prestons; and a *lis pendens* filed June 17, 1944, incident to the original foreclosure suit was a matter of record at the time of the alleged purchase of the property by the Prestons. Decision in this Court of that controversy was not rendered until October 8, 1945. The record discloses that Preston is not a man inexperienced in business. In fact he is an attorney who has practiced law in three states, though not licensed in Michigan. As a witness in

the former trial of this case, which occurred months after the claimed purchase by the Prestons, Walter Preston testified that he then resided "with the Leonards *at their house*." To accept defendants' claim under the circumstances of this record that the Prestons were innocent purchasers with funds of their own of the Leonard farm, that they should not be charged with knowledge of plaintiffs' claim of an unsatisfied mortgage lien against the property, stretches one's credulity beyond the limit.

From the foregoing, and other corroborating circumstances appearing in the record, we conclude that the trial judge was correct in holding that at the time the Prestons took the record title to the Leonard farm they did so "with full knowledge * * * that said mortgage (of plaintiffs) was at the time of the conveyance a valid lien against said property, and that said property was at that time subject to the lien of said mortgage, and that the said Prestons well knew at the time of said conveyance (to them) that the mortgage indebtedness had not been paid and knew that the discharge of the mortgage had no validity and that the said Prestons were not innocent purchasers of the property."

There is no merit to defendants' claim that plaintiffs' right of action is barred by the statute of limitations. The bill of complaint as originally filed was for the foreclosure of a mortgage, and as modified by the amended pleadings it was still a bill for the foreclosure of a mortgage.

"No suit or proceeding shall be maintained to foreclose a mortgage on real estate, either at law or in equity, unless commenced within fifteen years from and after such mortgage shall become due and payable, or within fifteen years after the last payment was made on said mortgage." 3 Comp. Laws 1929, § 13975 (Stat. Ann. § 27.604).

As to the effect of the above statutory provision see *Guardian Depositors Corp.* v. *Wagner,* 287 Mich. 202. The $1,000 mortgage which plaintiffs seek to foreclose by its terms was not due until December 1, 1936. Defendants' claim of a valid discharge of this mortgage is only incidental to the foreclosure proceedings; and since such discharge is found to be ineffective, plaintiffs' right to foreclosure is not barred by the statute.

Nor is there any merit, under the circumstances of this case, to defendants' claim that plaintiffs by reason of laches should be barred from relief. Clearly under the facts in the instant case there is no equity in the defense of laches as to any of the defendants. Neither the Leonards, nor the Prestons who are held not to be innocent purchasers, have been prejudiced by delay in bringing this foreclosure suit. Laches is an affirmative defense; and mere lapse of time, without a showing of prejudice, does not constitute laches. *Kelley* v. *Hoogerhyde,* 314 Mich. 37. In the cited case a headnote reads:

"While evidence of lapse of time should be considered with other facts and circumstances of a case in determining laches, laches will not be permitted to defeat recovery in equity if it would be inequitable to do so."

The decree entered in the circuit court is affirmed, with costs to appellees.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.