*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FELICIA HENDERSON,

        Plaintiff-Appellant,

v

AMOS FINANCIAL, LLC,

        Defendant-Appellee.

UNPUBLISHED
October 30, 2024
11:40 AM

No. 366628
Oakland Circuit Court
LC No. 2022-194307-CH

Before: MURRAY, P.J., and BORRELLO and MARIANI, JJ.

PER CURIAM.

In this action to quiet title and for declaratory and equitable relief, plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant. On appeal, plaintiff argues that defendant has not shown a record chain of title that would allow it to foreclose on plaintiff's mortgage, a discharge of the mortgage at issue that was recorded by defendant's predecessor in interest remains in effect and has not been rescinded, and the trial court erred by declining to apply the doctrine of laches. We affirm.

## I. BACKGROUND

In 2003, plaintiff signed a note for a loan from Key Bank, USA NA secured by a second mortgage on her home ("the property") that was executed in favor of Key Bank.[1] Plaintiff went into default on the note and stopped making payments by 2008. In 2011, Key Bank sold and assigned the note and mortgage to defendant. Defendant did not record the assignment with the Oakland County Register of Deeds until its employee, Brian Donegan, filed an "Assignment of Mortgage" document in 2015 ("the 2015 recorded assignment"). In 2016, due to an administrative error, Key Bank recorded an instrument purporting to discharge the mortgage. In 2020, defendant, pursuant to MCL 565.451a(b), recorded a document entitled "Affidavit/Memorandum" ("the affidavit") that was sworn by a Key Bank employee and explained that the mortgage discharge

---

[1] Plaintiff obtained the loan and executed a note secured by the mortgage with her husband, Angelo Henderson. Angelo died in 2014.

was recorded in error and that the discharge was rescinded. Later in 2020, defendant attempted to collect payment of the debt from plaintiff. In 2022, defendant initiated proceedings to foreclose on the mortgage.

Plaintiff then filed this action to quiet title to the property in her favor and for declaratory and injunctive relief to prohibit defendant from engaging in foreclosure proceedings on the basis that the 2015 recorded assignment was insufficient for defendant to establish a proper chain of title to the mortgage and that the mortgage could not be foreclosed on because it had been discharged. Defendant moved for summary disposition, arguing that the 2015 recorded assignment and the affidavit were sufficient to establish its right to foreclose on the mortgage. Plaintiff filed a response and countermotion for summary disposition, arguing that she had established entitlement to relief and that, additionally, defendant's ability to foreclose on the mortgage was barred by the equitable doctrine of laches.

In a thorough written opinion, the trial court granted summary disposition in favor of defendant on the basis that the 2015 recorded assignment properly established a chain of title, the affidavit was sufficient to set aside any discharge of the mortgage, and laches should not be applied because defendant had initiated foreclosure proceedings within the statutory period of limitations.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim) and MCR 2.116(C)(10) (no question of material fact), and plaintiff moved for summary disposition pursuant to MCR 2.116(C)(9) (failure to state a valid defense) and MCR 2.116(C)(10). The trial court decided the motions under MCR 2.116(C)(10). Because the parties relied on evidence outside the pleadings in their motions, and plaintiff has not argued that the trial court erred when it denied her motion under MCR 2.116(C)(9), the trial court's decision will be reviewed under MCR 2.116(C)(10). *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 582; 794 NW2d 76 (2010).

A motion brought pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil*, 504 Mich at 160. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks, citation, and alteration omitted). "When reviewing such a motion, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (quotation marks, citation, alteration, and ellipses omitted). A motion is properly granted pursuant to MCR 2.116(C)(10) when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *BC Tile & Marble Co, Inc*, 288 Mich App at 583.

This Court reviews de novo a trial court's decision on whether to apply the equitable doctrine of laches. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008). Any "findings of fact supporting an equitable decision are reviewed for clear error." *Id*.

"A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 92; 662 NW2d 387 (2003).

## III. THE ASSIGNMENT

Plaintiff argues that the 2015 assignment recorded by defendant was invalid because the assignment purported to presently transfer from Key Bank to defendant an interest in 2015 that Key Bank had not held since 2011. We conclude that defendant properly recorded an assignment in 2015 when the transfer of the note and mortgage occurred in 2011.

Foreclosure by advertisement is only permissible when "the proceedings are instituted in accordance with the foreclosure statutes." *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 138; 863 NW2d 344 (2014). "Trial courts must strictly comply with foreclosure statutes." *Great Lakes Prop Mgt Consultants, Inc v HP Foreclosure Solution, LLC*, ___ Mich App ___, ___; ___NW3d ___ (2023) (Docket No. 363746); slip op at 11. MCL 600.3204 provides, in pertinent part:

> (1) A party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>
> * * *
>
> (c) The mortgage containing the power of sale has been properly recorded.
>
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.
>
> * * *
>
> (3) If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title must exist before the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage.

In *Kim v JPMorgan Chase Bank, NA*, 493 Mich 98, 106; 825 NW2d 329 (2012), the Supreme Court explained that, "as a general matter, a mortgagee cannot validly foreclose a mortgage by advertisement before the mortgage and all assignments of that mortgage are duly recorded." "Assignment agreements are considered contracts . . . ." *Centria Home Rehab, LLC v Allstate Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363699); slip op at 2. "A mortgage is a mere security interest incident to an underlying obligation, and the transfer of the note necessarily includes a transfer of the mortgage with it." *Fed Home Loan Mtg Corp v Werme*, 335 Mich App 461, 471; 966 NW2d 729 (2021) (quotation marks and citation omitted). A mortgage cannot be transferred separately from the note underlying the mortgage. *Prime Fin*

-3-

*Servs, LLC v Vinton*, 279 Mich App 245, 257; 761 NW2d 694 (2008). Therefore, a mortgage cannot be conveyed in the absence of a contract between the grantor and the grantee. *Kim*, 493 Mich at 106; *Werme*, 335 Mich App at 471.

As noted, plaintiff argues that the document recorded as an assignment in 2015 cannot be a valid assignment of the mortgage interest because the mortgage was assigned between these same parties in 2011. Therefore, according to plaintiff, the 2015 recorded assignment cannot be valid because Key Bank could not presently assign in 2015 a mortgage interest that it had not held since 2011, citing *Burkhardt v Bailey*, 260 Mich App 636; 680 NW2d 453 (2004). Applying *Burkhardt*, plaintiff argues that Key Bank could not assign a note and mortgage to defendant in 2015 after it had given up all rights to the note and mortgage in 2011, so the 2015 recorded assignment cannot satisfy the requirement of the foreclosure statute that all assignments of a mortgage must be recorded before a property can be sold in foreclosure.

Plaintiff is not entitled to relief on the basis that an assignment executed in 2011 cannot be recorded in 2015. The logical extension of plaintiff's argument is essentially that there is only one chance for an assignor or assignee to record the assignment of a mortgage or the right to foreclose on the mortgage will be extinguished. However, an assignment does not have to be immediately recorded to be valid and enforceable at a later date. *Newman v Real Time Resolutions, Inc*, 342 Mich App 405, 413 n 4; 994 NW2d 852 (2022). Rather, "an assignment of a mortgage does not have to be recorded unless an assignee is seeking a foreclose sale." *Id*. Therefore, failure to immediately record an assignment of a mortgage does not forever bar an assignee from foreclosing on a mortgage as plaintiff argues. There is nothing in the law that would cause defendant to lose its right to foreclose on the mortgage because it waited to record the assignment. *Id*.

Plaintiff argues in three short sentences and without citation to any law, that the 2015 recorded assignment could not be valid because it was executed and signed only by Donegan, and was not signed by anyone with authority to sign on behalf of Key Bank. Michigan law has long recognized that the conveyance of an interest in real property "must be in writing and signed by the grantor or by some party thereto by him lawfully authorized in writing." *Fowler v Cornwell*, 328 Mich 89, 97; 43 NW2d 73 (1950). Under the statute of frauds, MCL 566.106:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

This Court has held that " '[s]ubscribe' means 'to append, as one's signature, at the bottom of a document or the like; sign.' " *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 459; 733 NW2d 766 (2006) (citation and emphasis omitted).

The 2015 recorded assignment was subscribed by Donegan, who had the power to do so through a power of attorney signed by Key Bank authorizing an employee of defendant to execute an assignment on behalf of Key Bank. Under MCL 565.36, a conveyance that was executed

pursuant to a power of attorney may be recorded with a register of deeds. The document attached to defendant's motion, entitled "LIMITED POWER OF ATTORNEY," states, in pertinent part:

> Key Bank, National Association ("Seller"), subject to the terms and conditions in that certain Purchase and Sale Agreement dated October l7, 2011 (the "Agreement") between Seller and Amos Financial LLC ("Buyer"), and with respect to those certain purchased Accounts (as defined in the Agreement), hereby names, constitutes and appoints Buyer, or any of its authorized agents, employees or representatives, its duly authorized attorney and agent with limited power and authority to . . . (ii) perfect, maintain, and release any security interests in the Accounts; (iii) transfer and obtain any titles or evidence of ownership . . . .

On its face, the power-of-attorney document authorized Donegan, as an employee of defendant, to execute an assignment on behalf of Key Bank. The 2015 recorded assignment was valid, and established the proper chain of title for defendant to seek a foreclosure. MCL 600.3204(3).

## IV. THE AFFIDAVIT

Plaintiff also argues that, even if a chain of title was established, the discharge of the mortgage remained valid after its recording because MCL 565.451a(b) does not allow the discharge to be rescinded under these circumstances.

An action to quiet title is governed by statute, but the proceedings are equitable in nature. MCL 600.2932(5). MCL 600.2932(1) provides:

> Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

In an action to quiet title, the plaintiff bears the burden of establishing a prima facie case of title. *Werme*, 335 Mich App at 478. If the plaintiff fails to meet that burden, summary disposition is properly granted in favor of the defendant. *Id*. But, if the plaintiff does establish a prima facie case of title, the burden shifts to the defendant to prove that it has a valid interest in the property. See *id*.

The discharge of mortgages is governed by statute. MCL 565.41(1) provides, in pertinent part:

> [A]fter a mortgage has been paid or otherwise satisfied, the mortgagee or the personal representative, successor, or assign of the mortgagee shall prepare a discharge of the mortgage, file the discharge with the register of deeds for the county where the mortgaged property is located, and pay the fee for recording the discharge.

"When a document stating that a mortgage is discharged is filed with the register of deeds, the mortgage is discharged." *Burkhardt*, 260 Mich App at 657. However, a discharge of a mortgage

may also "be rendered inoperative by a lack of consideration therefor." *Plasger v Leonard*, 316 Mich 174, 176; 25 NW2d 156 (1946) (quotation marks and citation omitted).

Here, defendant attempted to invalidate and rescind the 2016 discharge of the mortgage that was recorded by Key Bank on the basis that the discharge was recorded in error. MCL 565.451a allows a party, in certain enumerated circumstances, to record an affidavit in the public record that provides evidence that some circumstance or event has happened that may affect title to a property. MCL 565.451a provides, in pertinent part:

> An affidavit stating facts relating to any of the following matters that may affect the title to real property in this state and made by any person having knowledge of the facts and competent to testify concerning those facts in open court may be recorded in the office of the register of deeds of the county where the real property is situated:
>
> * * *
>
> (b) Knowledge of the happening of any condition or event that may terminate an estate or interest in real property.

Plaintiff argues that the affidavit did not comply with the requirements of MCL 565.451a(b) because it did not set forth an affiant's knowledge of the happening of a condition or event that may terminate an interest in real property. Rather, according to plaintiff, no condition or event had already happened to rescind the discharge, and defendant impermissibly attempted to use the affidavit as an instrument to presently cause the discharge to be rescinded.

This Court has considered two cases in which a party attempted to have an affidavit recorded under MCL 565.451a(b) invalidated on the basis that the affidavit attempted to create the condition or event that affected title to or an interest in real property rather than memorialize a past condition or event. In *Wilmington Savings Fund Society, FSB v Clare*, 323 Mich App 678, 681; 919 NW2d 420 (2018), the defendant had granted a mortgage in favor of a lender, which then assigned the mortgage to an original assignee. After the defendant defaulted on the mortgage note, the original assignee initiated foreclosure proceedings, and the property was sold through a sheriff's sale. *Id*. The mortgage was assigned again and, after the redemption period for the property expired, the second assignee initiated eviction proceedings against the defendant in a separate case. *Id*. at 681-682. In the separate case, the district court ruled against the second assignee because that party had not established that it gained title to the property through a valid assignment. *Id*. at 682. After that case ended, the mortgage was assigned several more times, and a subsequent assignee recorded an "expungement affidavit," which attempted to void the sheriff's sale, restore title to the property to the defendant, and reinstate the mortgage on the property, thus returning the parties to the positions they were in before the foreclosure proceedings. *Id*. at 682-683.

Yet another assignee, the plaintiff, filed the action in *Clare* to have the recorded expungement affidavit given effect, reinstating title to the original property owner, and for judicial foreclosure. *Id*. at 683. The trial court granted summary disposition in favor of the defendant on the basis that the mortgage had been extinguished, the expungement affidavit was without effect,

and the plaintiff therefore lacked standing to initiate the case. *Id*. at 683-684. This Court affirmed the trial court's ruling that the expungement affidavit lacked effect, *id*. at 686, reasoning that the plain text of MCL 565.451a(b), only allows an affidavit to be recorded to memorialize some condition or event that has already happened that affects title to real property, *id*. at 689. The statute does not allow a party to change the status of title to a property by simply announcing the change through recording an affidavit under MCL 565.451a(b). *Id*.

In *1373 Moulin, LLC v Wolf*, 341 Mich App 652, 655-656, 666; 992 NW2d 314 (2022), this Court addressed whether an affidavit recorded under MCL 565.451a(b) had legal effect regarding a mortgage. In *Wolf*, one of the defendants, Deana Wolf, purchased a property and granted a first mortgage and a second mortgage in favor of a lender. *Id*. at 655. Wolf defaulted on the first mortgage, and the original lender's successor, Litton Loan Servicing, LP, initiated foreclosure by advertisement proceedings. *Id*. Litton obtained a sheriff's deed to the property. *Id*. During the redemption period, Litton and Wolf agreed to some type of payment plan. *Id*. An employee of Litton executed and recorded an affidavit pursuant to MCL 565.451a(b), stating that Wolf complied with the parties' agreement, the sheriff's deed was voided, and the first mortgage was reinstated. *Id*. at 655-656. Had the sheriff's sale remained in effect, the second mortgage would have been extinguished. *Id*. at 656. After the agreement and the recording of the affidavit, Wolf made payments on the first mortgage for about 10 years, and then she sold the property to the plaintiff. *Id*. When the sale to the plaintiff was executed, the first mortgage was paid off and payment for the second mortgage was held in escrow. *Id*. A few months later, a debt collector, who would become a defendant in *Wolf*, attempted to collect payment for the second mortgage from Wolf. *Id*. at 657. Wolf did not make payments, and the debt collector initiated foreclosure proceedings. *Id*.

The plaintiff filed an action to set aside the affidavit, thus reinstating the foreclosure sale that extinguished the second mortgage, on the basis that the affidavit was ineffective because it created the condition or event affecting title. *Id*. The trial court granted summary disposition in favor of the debt collector. *Id*. at 658. This Court affirmed, and distinguished the situation in *Wolf* from the holding in *Clare* on the basis that *Clare* involved a unilateral action of a previous mortgagee that was attempting to set aside a sale and reinstate a mortgage, whereas in *Wolf*, Wolf and Litton had mutually agreed to void the sheriff's deed and reinstate the first mortgage, reinstating the second mortgage in the process. *Id*. at 668-669. The new condition in *Wolf*, under which the sheriff's sale was set aside and the mortgages were reinstated, had already happened, and the recorded affidavit merely memorialized those facts in the public record. *Id*. at 668. Therefore, the affidavit complied with the requirements of MCL 565.451a(b), and had legal effect. *Id*. at 669. Accordingly, this Court held that the second mortgage was not extinguished by the sheriff's sale and the second mortgage remained a valid lien on the property. *Id*.

The affidavit at issue here identifies the happening of three "condition[s] or event[s] that may terminate an estate or interest in real property," which can show that the note and mortgage were assigned and that the discharge was recorded in error. First, the affidavit identifies the mortgage at issue by reference to the liber and page number where the mortgage is located in the public record, states that Key Bank was the original secured party, and states that defendant is the current secured party, referencing the 2015 assignment recording by liber and page number. Second, the affidavit states that the security interest was "conveyed and sold" to defendant on October 17, 2011. Third, the affidavit states that "[t]he release was recorded in error, is hereby

rescinded, and is declared to be of no effect." The 2011 conveyance and the 2015 recording of the assignment clearly predated the affidavit, which was executed in 2019 and recorded in 2020, so the affidavit was properly used as evidence of the assignment. The recording of the discharge in 2016 also predated the affidavit. Therefore, the affidavit may be used as evidence to show that the discharge was recorded in error. The only element of the affidavit that purports to cause something contemporaneously with the execution of the affidavit is the statement that the discharge is rescinded and declared to be of no effect. Under *Clare*, 323 Mich App at 689, and *Wolf*, 341 Mich App at 667, that statement cannot cause a discharge to be set aside and the mortgage reinstated.

As in *Wolf*, 341 Mich App at 655-658, the affidavit was not recorded solely as a present attempt to revive an interest in a mortgage that had been discharged. Rather, the affidavit provides evidence that an event happened that could terminate defendant's interest in real property, which was the recording of the discharge, but that the mortgage interest remains valid because Key Bank could not have discharged the mortgage after it had already assigned the mortgage. Under the circumstances, defendant has established that it retained an interest in the note and mortgage that remained valid after Key Bank recorded the discharge. In the affidavit, Key Bank disclaimed any interest in the note and mortgage and stated that the discharge was recorded in error. The affidavit also provides prima facie evidence that Key Bank assigned its interest to defendant before recording the discharge. Plaintiff has not produced any evidence that could put those facts into dispute. Therefore, defendant established that it has an interest in the mortgage that was not extinguished by the 2016 recorded discharge.

As defendant also argues, the discharge of the mortgage by Key Bank could be rescinded because there was a lack of consideration for a discharge. Plaintiff has made no allegation or produced any evidence that she offered some form of consideration *to defendant* in exchange for a discharge of the mortgage. Instead, she argues that no consideration was needed. Although the historical rule was that "the release of a mortgage may be rendered inoperative by a lack of consideration therefor," *Plasger*, 316 Mich at 176 (quotation marks and citation omitted), that common-law rule has been modified by statute, and a lack of consideration exchanged for the discharge of a mortgage does not necessarily render the discharge inoperative. Under MCL 566.1:

> An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration: Provided, That the agreement changing, modifying, or discharging such contract, obligation, lease, mortgage or security interest shall not be valid or binding unless it shall be in writing and signed by the party against whom it is sought to enforce the change, modification, or discharge.

However, plaintiff cannot invoke MCL 566.1 to prevent the discharge from being voided, as she seeks to enforce the discharge against defendant, but it was defendant's predecessor in interest, Key Bank, that signed the discharge. Without an agreement or discharge signed by *defendant*, there is nothing for plaintiff to enforce against defendant under MCL 566.1. Therefore, to whatever extent the mortgage discharge could have had effect, the discharge lacked consideration and was not effective as to plaintiff.

## V. LACHES

Plaintiff also argues that the trial court erred when it declined to apply the equitable doctrine of laches to bar defendant from foreclosing on the mortgage.

"Laches is an equitable doctrine." *Attorney General v PowerPick Club*, 287 Mich App 13, 52; 783 NW2d 515 (2010). "Laches is an affirmative defense based primarily on circumstances that render it inequitable to grant relief to a dilatory plaintiff." *Id*. at 51. "The doctrine of laches is concerned with unreasonable delay that results in circumstances that would render inequitable any grant of relief to the dilatory plaintiff." *Yankee Springs Twp v Fox*, 264 Mich App 604, 611; 692 NW2d 728 (2004) (quotation marks and citation omitted). "[L]aches is not triggered by the passage of time alone." *Knight v Northpointe Bank*, 300 Mich App 109, 114-115; 832 NW2d 439 (2013). "The doctrine of laches is triggered by the plaintiff's failure to do something that should have been done under the circumstances or failure to claim or enforce a right at the proper time." *PowerPick Club*, 287 Mich App at 51. "The application of the doctrine of laches requires the passage of time combined with a change in condition that would make it inequitable to enforce the claim against the defendant." *Yankee Springs Twp*, 264 Mich App at 612. "It is the prejudice occasioned by the delay that justifies the application of laches." *Knight*, 300 Mich App at 115. "The defense, to be raised properly, must be accompanied by a finding that the delay caused some prejudice to the party asserting laches and that it would be inequitable to ignore the prejudice so created." *PowerPick Club*, 287 Mich App at 51. The use of equity to preclude foreclosure by advertisement of real property is typically reserved for "unusual circumstances" or when a party has raised "a valid fraud claim." *Mitchell v Dahlberg*, 215 Mich App 718, 724; 547 NW2d 74 (1996). Unusual circumstances that may warrant the use of equity to preclude foreclosure by advertisement include accident or mistake. *Id*.

Plaintiff argues that the passage of time between when she stopped making payments on the note (2008) and the initiation of foreclosure proceedings (in 2022) was sufficient to justify the application of laches. Because defendant began foreclosure proceedings 14 years after plaintiff's last payment on the note, foreclosure was still permissible under the 15-year statute of limitations for foreclosing on a mortgage. MCL 600.5803. But, as this Court has explained, there is "a relationship between laches and the statute of limitations." *Tenneco Inc*, 281 Mich App at 456. "[L]aches is viewed as the equitable counterpart to the statute of limitations." *Id*. "If laches applies, a claim may be barred even though the period of limitations has not run. The application of laches can shorten, but never lengthen, the analogous period of limitations." *Id*. at 456-457.

Plaintiff has shown that, to some extent, defendant was dilatory and unreasonably delayed asserting its rights under the note and mortgage. According to plaintiff, and defendant has not refuted it, after the note and mortgage were assigned in 2011, defendant did not provide her with notice of the assignment within 15 days, which is required for mortgages protected under federal law. 12 USC 2605(c)(2). Four years after the assignment, defendant recorded an instrument that placed on record title that the assignment occurred. The 2015 recorded assignment provided notice that defendant was claiming a right to the note and mortgage. Defendant did not take any further action to enforce its rights until it recorded the affidavit, which was also not definitive that defendant had the right to foreclose on the mortgage. The public record contained evidence that defendant was claiming an interest in the mortgage, but it does not appear that defendant gave plaintiff actual notice that it claimed an interest in the note and mortgage until 2020. See MCL

565.33 ("The recording of an assignment of a mortgage shall not, in itself, be deemed notice of such assignment to the mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them, or either of them to the mortgagee."). By the time actual notice was given, defendant had held the right to collect on the note and mortgage for nine years, and there were only three years left in the limitations period for defendant to collect a debt. Under the circumstances, it can be concluded that defendant unreasonably delayed asserting its rights under the note and mortgage.

Having shown some degree of an unreasonable delay, plaintiff must also show that she was prejudiced by a change in condition that accompanied the delay. *Yankee Springs Twp*, 264 Mich App at 612. Plaintiff has not shown how she was prejudiced by the delay between 2011 and 2016. During that time, plaintiff knew that she was in default on the loan and did not attempt to make any payment. Therefore, any prejudice that plaintiff may have suffered would have to have occurred after the 2016 discharge.

To that end, plaintiff averred in her affidavit that, when she was exploring opportunities to refinance her debt in 2016, she relied on the statement from a potential lender that Key Bank had discharged the mortgage. Plaintiff chose to not refinance her debt after learning of the discharge and did not pursue any loan forgiveness programs. Plaintiff also chose to "recently" retire, and to help pay for her son's college education on the basis of her reliance on the 2016 discharge. According to plaintiff, she was prejudiced by defendant's lack of action because, by the time she learned that defendant was attempting to collect on the debt associated with the mortgage, the choices she made in reliance on the discharge prevented her from being able to pay off the debt.

Plaintiff produced evidence showing a delay and some amount of prejudice, but delay and prejudice on their own are insufficient to apply laches. *PowerPick Club*, 287 Mich App at 51. Plaintiff must still show that it would be inequitable to allow defendant to enforce its rights under the mortgage. *Id*. The equities do not favor her in that regard. Although the erroneous recording of the discharge by Key Bank presented an "unusual circumstance" that could justify shortening the limitations period, *Mitchell*, 215 Mich App at 724, it remains undisputed that plaintiff knew that she had not made any payment on the mortgage since 2008, that there was an assignment made to defendant in 2015, and that another entity less than a year later attempted to discharge the mortgage. Even if those documents were not clear to a layperson, the fact that they were filed should have at least put her on notice that there was significant uncertainty in Key Bank providing her a discharge of her outstanding mortgage. As the trial court concluded, these facts weigh against application of the equitable doctrine of laches.

With respect to her challenge to the trial court's findings on this issue, plaintiff argues that the trial court did not adequately consider her reliance on the discharge and the realities of long-term financial planning. Particularly, plaintiff argues that the trial court improperly held against her the fact that she did not apply for loan forgiveness. According to plaintiff, the trial court misinterpreted the situation because she did not apply for loan forgiveness because she believed the mortgage had been discharged. However, it appears that the trial court pointed out the fact that plaintiff had not applied for loan forgiveness to show that plaintiff should have questioned whether the discharge was recorded in error, i.e., whether plaintiff's reliance on the recorded discharge was reasonable. The trial court did not err in doing so.

-10-

Plaintiff also argues that the trial court erroneously considered the fact that defendant did not act in bad faith to conclude that laches should not be applied. According to plaintiff, bad faith is not an element required to show that laches should be applied, as she is only required to show an unreasonable delay and that she was prejudiced by a change in her position. However, whether a party acted in bad faith is a proper consideration because the decision whether to apply laches lies in equity. *PowerPick Club*, 287 Mich App at 52. Therefore, the trial court did not err when it considered whether defendant acted in bad faith. There is no evidence that defendant engaged in any artifice in order to mislead plaintiff regarding whether it would proceed with foreclosure. Defendant never attempted to mislead plaintiff or gain an advantage in any dispute regarding defendant's right to foreclose on the mortgage. The trial court did not err when it considered and determined that defendant did not act in bad faith.

Finally, plaintiff argues that the trial court did not properly account for the fact that 11 years elapsed from when defendant was assigned the interest and when it initiated foreclosure proceedings. However, there is no dispute that plaintiff took out a mortgage loan in 2003, began to default in 2005, and made no payments on the note after 2008. Thus, plaintiff took the full benefit of the loan and then paid back very little over a few short years. Although defendant waited until near the end of the limitations period to initiate foreclosure proceedings, defendant began attempting to collect on the debt about three years before the limitations period ended. After that, defendant waited more than a year and a half to begin foreclosure proceedings after attempting to collect on the debt. Although plaintiff made decisions that made it harder for her to pay the balance on the mortgage, plaintiff still had a considerable amount of time in which to rearrange her finances to avoid foreclosure. To date, defendant has not skipped a step required to foreclose on the property and the initiation of foreclosure proceedings was within the limitations period.

Affirmed.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Philip P. Mariani

-11-