*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAWN BILBREY, DALE BILBREY, and DANA
BILBREY,

        Plaintiffs/Counterdefendants-
        Appellees,

v

JOHN GRAHAM, INC.,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
December 03, 2024
10:11 AM

No. 367391
Macomb Circuit Court
LC No. 22-004025-CH

Before: FEENEY, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

This quiet title action presents a number of unanswered questions. None of these questions
is material to our appellate review of the trial court's grant of summary disposition, however. What
is known is that both parties possess deeds that purportedly grant the same property to each of
them. In the trial court, Defendant/Counterplaintiff John Graham Inc. ("defendant") moved for
summary disposition under both MCR 2.116(C)(8) (failure to state a claim) and MCR
2.116(C)(10) (no genuine issue of material fact). Because the parties relied on matters outside the
pleadings, the trial court treated the motion as only being brought under MCR 2.116(C)(10). The
trial court denied summary disposition to defendant and granted summary disposition in favor of
plaintiffs/counterdefendants, Dawn Bilbrey; Dale Bilbrey; and Dana Bilbrey ("plaintiffs") on their
competing quiet claims. The trial court granted summary disposition in favor of defendant on
plaintiffs' claim under the anti-lockout statute. MCL 600.2918. We affirm.

## I. FACTUAL BACKGROUND

This case involves real property located in Warren, Michigan ("the property"). On July 25, 2014, Henry Windemuth ("Windemuth")[1] transferred ownership of the property to Sharon Bilbrey ("Sharon") via a quit claim deed ("the quit claim deed"). Sharon did not record the deed and died in 2017. Plaintiffs are Sharon's presumptive heirs.[2] At the time of Sharon's death, plaintiffs did not open a probate estate, record the deed, or take any action to secure their interest in the property.

On May 18, 2022, Windemuth entered into a Standard Real Estate Purchase Agreement ("the agreement") with BOBA LLC (BOBA),[3] that sold the property to BOBA. The agreement explicitly stated the property was "currently tenanted by renter, or will be at time of closing." The agreement also stated the tenant paid zero dollars a month in rent. BOBA assigned its rights under the agreement to Graham, a real estate company. The assignment bound Graham to all terms and provisions of the agreement.

Before closing, Graham received a title commitment from North American Title Insurance Company. Closing was assisted by Regions Title Company. During closing, Windemuth executed a warranty deed transferring ownership of the property to Graham. The warranty deed was recorded on June 7, 2022.

On August 6, 2022, Graham posted a demand to gain entry on the property. Graham's representative visited the property on August 8, 2022, and found it was occupied by plaintiffs, who refused the representative entry to the property. On August 11, 2022, plaintiffs recorded their quit claim deed. On August 16, 2022, Dana Bilbrey sent Graham a cease and desist letter, stating Graham's attempts to enter the property were unlawful. On August 18, 2022, Graham initiated eviction proceedings against plaintiffs, but the parties later agreed to dismiss this action.

Plaintiffs subsequently filed a complaint against Graham and Windemuth in circuit court seeking quiet title of the property and alleging Graham violated Michigan's antilockout laws. Graham counterclaimed seeking quiet title, alleging slander of title, and requesting declaratory relief. Graham also moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), arguing it had superior title to the property under Michigan's race-notice statute. Plaintiffs responded, arguing that "there are numerous *material* issues of fact in dispute on the claims in this case," although they did argue that they should be granted summary disposition on their anti-lockout claim under MCR 2.116(I)(2) because that is the "only issue lacking a material dispute that would warrant summary disposition . . . ." The essence of plaintiffs' argument is that defendant was not a bona fide purchaser for value because defendant was on notice of plaintiffs' interest in the property.

---

[1] The Bilbreys complaint included Windemuth as a defendant and a default judgment was entered against him. Windemuth is not a party to this appeal.

[2] Dale was Sharon's husband, while Dawn and Dana are two of her children.

[3] BOBA LLC is not a party to this appeal and was never a party in the trial court.

The trial court denied Graham's motion for summary disposition on the issue of quiet title, under MCR 2.116(C)(10), and granted summary disposition in favor of the Bilbreys,[4] reasoning Graham was not a bona fide purchaser for value because it had knowledge the property was occupied. The trial court granted Graham's motion for summary disposition on the issue of antilockout violations. Graham moved for reconsideration on the issue of quiet title, which the trial court denied. This appeal followed.

## II. STANDARDS OF REVIEW

"We review de novo motions for summary disposition brought under MCR 2.116(C)(10)." *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). "A de-novo review means that we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

"Summary disposition under MCR 2.116(I)(2) is appropriate when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law. The existence of a genuine issue of material fact precludes summary disposition under MCR 2.116(I)(2)." *Save Our Downtown v City of Traverse City*, 343 Mich App 523, 541; 997 NW2d 498 (2022) (quotation marks and citations omitted).

"We review for an abuse of discretion a trial court's decision . . . on a motion for reconsideration. . . ." *In re Ingham County Treasurer for Foreclosure*, 331 Mich App 74, 77; 951 NW2d 85 (2020). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes. A court by definition abuses its discretion when it makes an error of law." *Id*. at 77-78 (quotation marks and citations omitted).

"Issues of statutory interpretation are reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). "When interpreting a statute, courts must ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Andrie, Inc v Dep't of Treasury*, 496 Mich 161, 167; 853 NW2d 310 (2014) (quotation

---

[4] The fact that the Bilbreys did not move for summary disposition on their quiet title claim is irrelevant. Graham moved for summary disposition on its quiet title claim, and the trial court concluded that the Bilbreys, not Graham, were entitled to judgment in their favor. This was permitted by MCR 2.116(I)(2), which states, "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

marks and citations omitted). We must "consider the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Id*. (quotation marks and citations omitted).

"Whether a party has standing presents a question of law that this Court reviews de novo." *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 136; 863 NW2d 344 (2014). "We also review de novo a trial court's decision whether to apply equitable doctrines such as laches." *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 579; 939 NW2d 705 (2019).

## III. STANDING

Defendant argues the trial court erred by finding that plaintiffs have standing to bring this case. We disagree.

"To have standing, a party must demonstrate more than the ability to vigorously advocate; the party must also demonstrate it has a substantial interest that will be detrimentally affected in a manner different from the interests of the public at large." *MOSES Inc v SEMCOG*, 270 Mich App 401, 412; 716 NW2d 278 (2006). "In general, standing requires more than having a personal stake in the outcome of litigation sufficient to ensure vigorous advocacy." *Id*. at 414 (quotation marks omitted). Standing "requires one [to have] in an individual or representative capacity some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy." *Id*. (quotation marks and citation omitted). "[T]o have standing, a plaintiff must demonstrate that his or her substantial interest will be detrimentally affected in a manner different from the citizenry at large." *Id*.

Under MCL 600.2932(1):

Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not. [MCL 600.2932(1).]

The trial court did not err when determining that plaintiffs had standing to bring this case. Plaintiffs brought this case because they claimed a superior interest in the property, adverse to the interest claimed by defendant. Because plaintiffs claim title to the property, they had standing to bring this claim.[5] See *MOSES* Inc, 270 Mich App at 414

---

[5] Defendant argues, because plaintiffs never opened a probate estate, they cannot have standing as the heirs of Sharon. We disagree. The quit claim deed conveyed the property to Sharon. Plaintiffs are Sharon's heirs. "Equitable title to the property vests in the decedent's heirs at the time of death, subject to the rights of creditors and the expenses of administration." *In re Forfeiture of $234,200*, 217 Mich App 320, 324; 551 NW2d 444 (1996).

## IV. RACE-NOTICE

It is undisputed that Graham purchased the disputed property from Henry Windemuth via warranty deed knowing that the property was occupied by plaintiffs, Dawn Bilbrey, Dale Bilbrey, and Dana Bilbrey (the Bilbreys). While Graham believed that the Bilbreys were merely tenants, it turned out that they actually had title to the property by way of an unrecorded quit claim deed. Despite Graham's purchase agreement with Windemuth requiring Windemuth to furnish documents to Graham confirming the Bilbreys status as tenants, Graham apparently waived those portions of the purchase agreement.[6] And while Graham purchased title insurance before buying the property, the purchased policy explicitly stated that it did not protect against "[r]rights of claim of parties in possession not recorded in Public Records." Graham never contacted the Bilbreys to inquire about their interest in the property. Graham instead simply accepted Windemuth's assertion that the Bilbreys were tenants, purchased the property from Windemuth, then filed the warranty deed to the property, leading to this action.

These facts, while unusual today, are not new. Our Supreme Court addressed similar facts nearly 80 years ago. In *Smelsey v Guarantee Fin Corp*, 310 Mich 674, 680; 17 NW2d 863 (1945), the defendants were in possession of the disputed property and had an unrecorded quit claim deed to it when it was purchased by the plaintiff. The plaintiff had actual knowledge of the defendants' possession of the property when the plaintiff purchased it, which, according to our Supreme Court, gave the plaintiff constructive notice of the defendants' unrecorded title. See *id*. at 680. The Court based this conclusion on the " 'elementary' " principle that " 'possession of real estate is constructive notice of title in the possessor.' " *Id*., quoting *Am Cedar & Lumber Co v Gustin*, 236 Mich 351, 359; 210 NW 300 (1926). See also *Fraser v Fleming*, 190 Mich 238, 244; 157 NW 269 (1916) ("Constructive notice by possession is equal to constructive notice by record.").[7] This

---

[6] The agreement stated "that [the] property is currently tenanted by renter," required Windemuth to provide "all documentation validating tenant occupancy of the home" and "all tenant information collected from application process," and required the tenants to sign a "cash-for-keys" agreement before closing.

[7] Graham acknowledges this rule but argues that it should no longer apply because it "defeats the purpose of MCL 565.29." That argument is unpersuasive because MCL 565.29 or its predecessor was always in effect when this rule was applied in the past. Graham also argues that the rule itself has not been consistently applied, pointing to analyses that supposedly "conflict[]" with the rule in *Burns v Berry*, 42 Mich 176; 3 NW 924 (1879) and *Harr v Coolbaugh*, 337 Mich 158; 59 NW2d 132 (1953). A simple review of both cases dispels this argument. *Burns* addressed two mortgages and held that the first-recorded mortgage had priority over the second-recorded mortgage. See *Burns*, 42 Mich at 180-181. *Burns* did not address the rule applied in *Smelsey* that knowledge of another's possession constitutes constructive notice of title, nor is it apparent why that rule would be relevant in the context of a mortgage-priority dispute like the one in *Burns*. *Harr* actually addressed the rule but is still easily distinguishable. At issue in *Harr* was an easement; the recorded deed for the dominant estate listed the easement, while an unrecorded deed for the servient estate did not. *Harr*, 337 Mich at 163-164. The owner of the servient estate never notified the owners of the dominant estate about his unrecorded deed, nor did the owner of the servient estate ever

-5-

constructive notice triggered the plaintiff's responsibility to determine the defendants' interest in the land. One way to do this was to contact the defendants directly; the *Smelsey* Court reasoned that, had the plaintiff's agent "made the obvious inquiry required of him, from the defendants known to be in possession," the plaintiff likely would have learned that the defendants had an unrecorded deed to the property. *Id*. at 681-682. The Court noted that the plaintiff's failure to contact the defendants was not a mere oversight because the plaintiff and its agent took some measures to determine title to the property, like "check[ing] the title with the abstract company," but "studiously refrained" from contacting the defendants. *Id*. at 682-683. This, combined with the fact that the defendants' actual possession of the property constituted constructive notice, demonstrated to the *Smelsey* Court that the plaintiff was willfully ignorant to whether the defendants had an interest in the property, and, as such, the plaintiff could not claim to be a good-faith purchaser. *Id*. at 683-684 ("'It is not competent to insist upon a state of ignorance when knowledge is the necessary consequence of admitted or established facts, or on any qualification of belief which is repugnant to reason and experience.") (Quotation marks and citation omitted.) See also *id*. at 684 ("One who willfully remains ignorant, where the rights of a third person are concerned, is as much in default as if he had the knowledge which he avoids.") (Quotation marks and citation omitted); *id*. at 684-685 ("'If defendant had been acting in good faith in the transaction, while he was making an effort to ascertain if the title was clear, and what rights complainants had, if any, he would have made inquiry of the very person who could have given him the information he was seeking.") (Quotation marks and citation omitted.) The *Smelsey* Court concluded that, because the plaintiff was not a good-faith purchaser as to the defendants, the recording statute did not protect the plaintiff's interest in the property with respect to the defendants. *Id*. at 685.

The facts of this case largely mirror the dispositive facts of *Smelsey*. Graham had actual knowledge that the Bilbreys possessed the property (which constituted constructive notice of title) but refrained from gaining any knowledge about their potential interest therein. Graham waived all of the provisions in its purchase agreement with Windemuth that would have confirmed that the Bilbreys were, in fact, tenants. And while Graham took some steps to determine title to the property by buying title insurance, the policy that Graham purchased did not protect against "[r]ights of claim of parties in possession not recorded in Public Records," i.e., any unrecorded claim the Bilbreys may have had in the property. Finally, despite its knowledge of the Bilbreys' occupancy, Graham never made "[a] simple inquiry directed to" the Bilbreys—an inquiry that *Smelsey* says was "required" after Graham learned of the Bilbreys' possession—to determine their interest in the property. *Id*. at 681, 683. Because Graham not only failed to reach out to the Bilbreys before purchasing the property but took affirmative steps to ensure its ignorance about

---

block or object to the dominant estate's use of the easement, despite knowing of the dominant estate's use of it. *Id*. at 165. *Harr* held that, under such facts, the servient estate's possession of the easement was not adverse, so it was not sufficient to give the purchasers of the dominant estate notice of the servient estate's title claim. *Id*. *Harr* distinguished its facts from cases in which "the possession was adverse, and thus was notice." *Id*. at 163. *Harr* therefore does not conflict with cases applying the general rule that possession of property constitutes constructive notice of title in the possessor; it instead adds the requirement that the possession be adverse, which is not in dispute here.

the Bilbreys' interest in the land despite its actual knowledge of the Bilbreys' possession, we hold that Graham was not a good-faith purchaser.

Because Graham failed to make even the slightest effort to confirm the Bilbreys' alleged status as tenants, and actually took steps to ensure that it remained ignorant to whether the Bilbreys were in fact tenants, Graham was not a good-faith purchaser as a matter of law.

## V.  UNCLEAN HANDS

Graham also argues the trial court erred by determining Graham had unclean hands. Graham asserts the Bilbreys had uncleans hands by failing to timely record the deed.  We disagree.

"The unclean-hands doctrine is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the [opposing party]." *New Prods Corp v Harbor Shores BHBT Land Dev, LLC*, 331 Mich App 614, 627; 953 NW2d 476 (2019) (quotation marks and citations omitted).  Our Michigan Supreme Court has explained: "In determining whether the plaintiffs come before this Court with clean hands, the primary factor to be considered is whether the plaintiffs sought to mislead or deceive the other party not whether that party relied upon plaintiffs' misrepresentations." *Stachnik v Winkel*, 394 Mich 375, 387; 230 NW2d 529 (1975) (footnote omitted).  "Any willful act that transgresses equitable standards of conduct is sufficient to allow a court to deny a party equitable relief." *New Prods Corp*, 331 Mich App at 627.  "A defendant with unclean hands may not defend on the ground that the plaintiff has unclean hands as well." *Attorney General v PowerPick Players' Club of Mich, LLC*, 287 Mich App 13, 53; 783 NW2d 515 (2010).

The trial court did not err when determining Graham had unclean hands.  As discussed, under Michigan's race-notice statute, MCL 565.29, Graham was not a good faith purchaser because it had constructive notice of the Bilbreys' potential interest in the property.  Graham was aware the property was occupied, yet made no inquiries into the Bilbreys' interests.  Graham did not inspect the property.  Graham is not entitled to equitable relief because it does not have superior title to the property.  Furthermore, Graham has introduced no evidence in this matter indicating that the Bilbreys sought to mislead or deceive Graham.  As a result, the trial court did not err when it refused to find that the Bilbreys acted with unclean hands.

## VI.  LACHES

Graham argues, alternatively, we should find the Bilbreys were not entitled to relief, based on estoppel by laches.  We disagree.

"The doctrine of laches applies in actions in which equitable relief is sought." *Nykoriak v Napoleon*, 334 Mich App 370, 382; 964 NW2d 895 (2020).

> Estoppel by laches is the failure to do something which should be done under the circumstances or the failure to claim or enforce a right at a proper time. To successfully assert laches as an affirmative defense, a defendant must demonstrate prejudice occasioned by the delay.  Typically, [l]aches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's

delay in asserting a legal right that was practicable to assert. A party guilty of laches is estopped from asserting a right it could have and should have asserted earlier. [*Home-Owners Ins Co*, 328 Mich App at 589 (quotation marks and citations omitted).]

Graham cannot show prejudice because it does not have superior title to the property. Graham had constructive notice of the Bilbreys' interest because it was aware the property was occupied. "Laches is an affirmative defense; and mere lapse of time, without a showing of prejudice, does not constitute laches." *Plasger v Leonard*, 316 Mich 174, 181; 25 NW2d 156 (1946). Although the Bilbreys waited a significant amount of time to record the quit claim deed, the trial court did not err by finding Graham was not entitled to equitable relief under the doctrine of laches.

## VII. CONCLUSION

The trial court did not err by granting summary disposition in favor of the Bilbreys on the issue of quiet title. Under Michigan's race-notice statute, the Bilbreys had superior title to the property. Although Graham recorded its deed first, Graham did not record in good faith because it had constructive notice of the Bilbreys' interest based on their possession of the property. The Bilbreys had standing to bring this case as parties asserting an ownership interest in the property. Defendant had unclean hands by recording its deed despite having constructive notice of the Bilbreys' interest. The Bilbreys are not precluded from relief under the doctrine of laches because defendant was not prejudiced by the Bilbreys' failure to timely record the quit claim deed.

Affirmed. Plaintiffs may tax costs.

/s/ Kathleen A. Feeney
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace